## CRABTREE ET AL. VS. McDANIEL.

A continuous, peaceable, adverse possession of slaves for the period of five years, vests title in the possessor. *Pryor & wife vs. Ryburn,* (at the present term.)

*Appeal from Lafayette Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

FOWLER, for appellants.

WATKINS & GALLAGHER and HEMPSTEAD, for the appellee.

Mr. Justice SCOTT delivered the opinion of the Court.

· Crabtree and wife, and Mary Nelson Penn, Sarah Ann Cook, Priscilla Cook and Zachariah Cook, minors, by Crabtree their next friend, in behalf of themselves, and all other heirs of Nancy McGhirt, alias Nancy McDaniel, exhibited their bill in the Lafayettee Circuit Court, on the 25th day of January, 1853, against James McDaniel; and afterwards filed an amendment thereto, alleging alltogether, substantially, as follows, *to wit :* That one Sarah McGhirt, otherwise called Sarah Ann McDaniel, had lately died intestate, in that county, leaving the said Nancy McGhirt her only child and heir surviving; that before, and at the death of Sarah, she owned in her own separate right, certain slaves who are described, the exclusive right to which vested in Nancy, as sole heir. That Nancy died afterwards, in that county, in infancy, intestate and without issue. That the father and mother of Sarah died in her lifetime. That the next of kin of Nancy are the sisters of her mother and their descendants, *to wit :* Priscilla, wife of Crabtree, Eliza, who married James, Elizabeth, who

married Jolly, and the minor complainants who are children of Hannah, another sister of Sarah, who first married Penn, after his death married Cook, and afterwards departed this life, leaving her surviving the four minor complainants, her only heirs and distributees. That James and Jolly and their wives had removed from the Creek Indian Nation, where they had long resided, to parts unknown, nor was it known to complainants, whether any of them were dead or alive. That Sarah, and all her sisters, were women of, and belonging to the Creek Nation of Indians. That by the customs, laws and usages of that tribe, a man who did not belong to that Nation, could not lawfully marry a woman of that Nation, without first obtaining a license from the Chief of the Town or Council of the Nation. That the defendant McDaniel, is a white man, and not a Creek Indian, and never obtained any such license to marry the said Sarah Ann. That by said laws of the Creeks, a *feme covert* of that tribe, holds the sole and exclusive right of property in slaves, whether acquired by gift, descent, purchase or distribution, before or after coverture, to her sole and separate use, and the husband acquires, by marriage, no estate whatever, in his wife's property, owned by her at the time of the marriage, or afterwards acquired by her; and on her death all such property descends to her children, and in default thereof to the next of kin of her own blood. That there had been no administration on the estate either of the said Sarah Ann, or of her daughter Nancy. That the slaves in controversy had come into the possession of the defendant McDaniel, who holds them without authority of law and as a *trustee* for the complainants, and the other heirs and legal representatives of the said Nancy, who are the rightful owners, and entitled to the possession of them. That the defendant intends removing them to parts unknown, beyond the limits of the State of Arkansas, pretending title thereto. And praying for answer, injunction, receiver, process of seizure and account of the hire, and for partition, distribution, and for general relief. The bill was verified by Crabtree's affidavit, and upon bond and security given, process of injunction and of seizure was awarded, and the slaves taken and hired out.

McDaniel answered, admitting that Sarah Ann, her father and mother, and her daughter Nancy, had died as alleged; that Nancy was the only child of Sarah Ann; the relationship of complainants, Priscilla and the minors, and James and Jolly's wives, as alleged; that there had been no administration of the estates of either Sarah Ann or Nancy, and that he was about to remove to Texas, and carry the slaves in question with him; but denying that Sarah Ann had any sole or separate estate at the time of her death, or that Nancy ever had any whatsoever, denying the mode of marriage alleged, and that Crabtree was ever married to Priscilla, but admitting she is now living with him as his wife; denying that Nancy was ever known by the name of Nancy McGhirt, or by any other than Nancy McDaniel, and also that the slaves in controversy, were ever wrongfully withheld by him from complainants, or any one else, or ever were held by him as trustee And averring the truth to be, that two of the slaves in controversy, from which the others have issued since the former came lawfully in the defendant's possession, were originally owned by one Zachariah McGhirt, a resident of the Creek Nation of Indians, whose wife was a woman of that tribe. That the said Zachariah and his said wife, were the father and mother of the said Sarah Ann, and of her before mentioned sisters. That these Indians have no written code of laws for their government, but that their local and domestic affairs were entirely governed by their established usages and customs. That by one of these, whenever a person, who was not held as a slave in said nation, desired to contract a marriage with a woman belonging to said tribe, all that was necessary to consummate such marriage was for the parties to live together as man and wife, in an open and public manner; and that he, the defendant, lived with the aforesaid Sarah Ann, and co-habited with her, as his wife, from about the year 1838 until the year 1846 or 1847, when she died. That he had several children by her, none of whom survived her, except the aforesaid Nancy. That after his marriage as aforesaid, his wife's father died in the Creek Nation, leaving considerable property.

That by other usages and customs of said tribe of Indians, after a sufficiency of the property of the deceased was applied to the payment of his debts, the residue was divided equally among his children. That in accordance thereto, two of the slaves of the said Zachariah were sold for the payment of his debts and the proceeds proving to be sufficient for that purpose, the residue was equally divided among his children and their representatives. That by that division the defendant, in right of his wife Sarah Ann aforesaid, received for his share the aforesaid two slaves, which, together with their issue since, are now in controversy. That by the customs and usages of said Creek Nation of Indians, the husband of any Creek woman could take, have and use, as his absolute property, whatever might descend or be distributed to her after coverture, and that in pursuance thereof the defendant, as the husband of the said Sarah Ann, reduced said slaves to his own possession, whereby they became his absolute property and that from that time he has held quiet, peaceable and absolute possession of them and of their increase, as his own exclusive property, until taken from him by the order of the Chancellor under the prayer of this bill. And insists that under said customs and usages, they have been ever since the aforesaid division, and are still, his absolute property. And again averring that he legally and properly acquired the possession and control of said slaves, under the customs and usages of the aforesaid tribe of Indians, and that he so held the same afterwards, as long as he continued to reside in said Indian country, and removing them therefrom to the State of Arkansas as his absolute property, he has ever since continued so to hold them, he insists that, from his original lawful title and "long continued, peaceable and quiet possession, he is entitled to hold said slaves, as his absolute property, free from any pretended claim or demand of said claimants, or any one else, as the supposed heirs of the said Nancy." And alleging a want of equity in the bill, prays full benefit at the hearing, as if a demurrer had been interposed.

The answer was sworn to, and issue taken ; and the cause hav-

ing been previously set down for final hearing, was heard at the May term, 1854, of the Lafayette. Circuit Court, upon the bill, answer, and replication and a mass of evidence by deposition, when the court found the slaves in controversy to be the absolute property of the defendant McDaniel, and that the complainants were entitled to no relief, dismissed their bill, with costs, and vacating the injunction and all other restaining orders previously made, decreed also, that the defendant should recover against the complainants all such damages as he had sustained by reason of the injunction and restraining orders aforesaid; but because the amount of damage was unknown, and there was not sufficient time to ascertain it, at that term of the court, by the inquiry of a jury, ordered a writ of enquiry therefor, returnable unto the next term in course; from which decree the complainant appealed to this court.

The larger portion of the testimony in the record, relates to the usages, customs and laws of the Creek Indians, set up in the pleadings. It is conflicting to a degree beyond reconciliation, and it would be, therefore, only by discarding some of it altogether, that any conclusion could be arrived at on the points contested. But, however these points might be found, they would not be decisive of the case, because it must unavoidably go for the defendant below, upon the ground of his long continued, peaceable, quiet and adverse possession. It will, therefore, be necessary only to set out the substance of the testimony relating to this ground of the defence.

It appears that Zachariah McGhirt departed this life in the Creek Nation sometime in the year 1840 or 1841, and his wife, also, died about the same time. That soon afterwards, there was a distribution of the property left by them, among their children and their representatives. That by means of this distribution, the negroes in controversy came to the possession of McDaniel, his alleged wife Sarah Ann being one of the distributees. Sarah Ann died, leaving her surviving one child named Nancy McDaniel, who died in the month of March, 1846. In the year 1842,

McDaniel settled in Lafayette county, Arkansas, where he has ever since resided, and where Sarah Ann and her daughters departed this life. When he came there, he brought with him the aforesaid Sarah Ann and her daughter, and also the slaves in controversy, and held the latter from thenceforward, in his continuous peaceable possession, as his own property up to the time when, on the 26th of January, 1853, they were taken from his possession by the sheriff of Lafayette county, by virtue of process of seizure, ordered by the Circuit Judge in vacation.

There is no evidence that there ever was any adverse claim to the slaves in controversy, on the part of the complainants or any one else, against McDaniel, until the filing of the bill in this case, which was the 25th of January, 1853, a period of more than five years after the death of the girl Nancy McDaniel, under whom the complainants set up title—Crabtree and his wife, living all the time in the neighborhood of McDaniel—of about twelve years from the time the negroes went into the possession of McDaniel, upon the distribution of the estate of McGhirt and wife, and of upwards of six years and one month after the approval of the statute of limitation and title in relation to slaves, expounded in the case of *Pryor et al. vs. Ryburn et al.*, decided at the present term.

Upon this ground then, the decree of the Circuit Court of Lafayette county, must be affirmed.