## McDANIEL vs. CRABTREE.

Where on a bill in chancery the defendant is enjoined from removing his negroes, and upon an order of seizure, they are taken out of his possession, and a decree is subsequently rendered in his favor, his damages would, ordinarily, be what their labor would have been worth had they continued in his possession. But he would, also, be entitled to damages for any loss that was the direct proximate and natural consequence of the removal of the negroes out of his possession.

But in such case the damages must not be remote, speculative, involving enquiries that are collateral to the consideration of the wrongful act. And so he could not recover, as damages, his counsel fee incurred in defending the suit: nor expenses incurred in employing an agent to attend to his other business, whilst he was engaged in the defence of the suit: nor what would or might have been the profits of his business had not his possession of the negroes in suit been interrupted,

*Appeal from Lafayette Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

HEMPSTEAD, for the appellant.

The appellant has a right to expect and demand that damages shall be awarded commensurate to the injury sustained in consequence of the issuance of the injunction and the seizure of his property; 2 *Greenl. Ev.* 253.

Being obliged to remain, he has a right to recover as damages the expenses incurred in sending his negroes to Texas— also his counsel fees in defence of the suit, which of course would not have been incurred but for the injunction. *Blakeney vs. Ferguson*, 18 *Ark.* 354; *Edwards vs. Bodine*, 11 *Paige* 225.

He was also entitled to recover by way of damages, the value of the hire of the slaves from the injunction and seizure to the time they were restored to him by the decree. *Blakeney vs. Ferguson*, 18 *Ark.* 354.

The testimony sufficiently shows the loss of a years crop in consequence of granting the injunction and seizing the slaves; and for this loss he has a right to recover as for one " occasioned by such injunction." *Sedg. on Dam.* 65.

GARLAND, for the appellee.

Such damages only are to be allowed as are the direct and necessary consequence of the acts or breach of duty complained of. 5 *Ark.* 140; 11 *Mctc.* 290; 13 *Ala.* 490. *Sedg. on Dam.* 82.

Counsel fees are not to be allowed as damages except in cases where malice and want of probable cause concur. *Sedg. on Dam.* 96.

Mr. Justice FAIRCHILD delivered the opinion of the court.

When this case had been affirmed, determining the slaves in controversy to be the property of the appellant, under the law of possession of five years, 17 *Ark.* 222; the inquiry of what damages McDaniel had sustained by the injunction, and by the seizure of the negroes, was prosecuted in the court below, and resulted in an assessment, for the amount of which a decree was entered for McDaniel. The assessment was made by the judge of the court sitting as a jury, for that purpose, by consent of parties, and amounted to sixty-five dollars—McDaniel being dissatisfied with the amount of the decree to him, appealed, and the case is now here upon nothing but the sufficiency of the damages.

The negroes that were the subject of McDaniel's claim for damages, were taken from him the 26th of January, and he came in possession of them again, under hiring from the sheriff, on the 8th of February, the next month—two of the negroes when taken were in the field, one was a cook, another a nurse, and others were children too small for field work.

If the hire of the negroes be the proper estimate of the damages sustained by McDaniel for the disturbance of his possession, ample allowance seems to have been made to him by the judge of the Circuit Court.

And, ordinarily, a loss sustained by a man for negroes being taken out of his possession, is what their labor would have been worth to him, had they continued in his possession. But upon the happening of other events that may be the direct consequences of the removal of negroes, other elements may enter into the calculation of losses, as if the negroes be removed in inclement weather, be injured thereby, or while removed contract disease or death from neglect, or if in consequence of their being taken away, that which they were working at, be wasted for want of attention, as if cotton could not be picked, grain or stock saved; in these and such like instances, the loss would not be made good by payment of the usual hire of the negroes; but because it directly flowed from their being taken away should be made good by him who took them without right.

Still damages to be recovered must be traceable to the act complained of as its direct proximate or natural consequence, must not be remote, speculative, involving enquiries that are collateral to the consideration of the wrongful act. *Sedgwick on Damages*, ch. 3. p. 112, 2d ed.; *Mayne on Damages*, 15; 2 *Greenleaf Ev. sec's.* 256, 261; *Crain vs. Petree*, 6 *Hill* 524; *Downer vs. Madison Co. Bank, ib.* 650.

Two sorts of damages seem to be claimed by McDaniel in this case, and they are made up of a positive loss to him of the amount he paid for counsel fees in defending the original case, in the court below, and in this court; and of the estimated loss which he sustained in not being able to make a crop in Texas, in the year 1853, as he seems to think he could and would have done but for the hindrance of this suit; and of expenses paid to a man whom he was obliged to hire to take his other negroes to Texas, because the original suit detained him in Lafayette county, or in the vicinity.

We have not been able to find any reason for imposing upon Crabtree the payment of McDaniel's counsel's fees, that would not apply with equal force against the plaintiff in every unsuccessful chancery suit, whether an injunction or seizure of pro-

perty, were, or were not invoked, or obtained, as a mode of precautionary relief.

Questions may arise between principal and surety, between parties to covenants in deeds, in actions for an oppressive and illegal use of extraordinary legal remedies, in malicious and fraudulent suits, and in admiralty cases, in which the assessing tribunal, in the exercise of its power of visiting the wrong doer with exemplary damages, may include counsel fees in their estimate; yet it is not the less the general rule that a suitor must himself, and without compensation, bear the burden of charges for legal advice and defence of his suit. *Sedgwick on Damages*, 95, 100, 2*d ed*.; *Guild vs. Guild*, 2 *Metc.* 232; *Arcambel vs Wiseman*, 3 *Dall.* 306; *Stimpson vs. The Railroad*, 1 *Wallace, jr. R.* 166, 172; *Barnard vs. Poor*, 21 *Pick.* 282.

A remark in *Blakeney vs. Ferguson*, 18 *Ark.* 354, and *Edwards vs. Bodine*, 11 *Paige* 223, are principally relied upon to sustain the claim of counsel fees made for McDaniel.

With regard to the latter case, it need only be said that the allowance of counsel fees was based solely upon a statute of New York, and rule of practice of its chancery court, and extended only to a prescribed and probably moderate sum for attendance of counsel to obtain a dissolution of an injunction.

In this case, the sum paid to counsel by McDaniel, and claimed from Crabtree, relates not alone to a motion to dissolve the injunction, but to the whole defence made by McDaniel in the Lafayette Chancery Court, and in this court upon appeal.

From the statement of the case in its published report, as well as from view of the transcript before us, we see that the claim made by Crabtree, and its resistance by McDaniel involved an enquiry into the existence and construction of the usages and laws of a foreign nation, an examination of much and conflicting testimony, and the effect of our five years possession law. These matters might, and would doubtless, have been examined and argued by counsel for McDaniel, if there had been no injunction or seizure of negroes in the case, and the award to McDaniel in the shape of damages, for the disso-

lution of an injuction as compensation for the gross sum paid by him for legal services in two courts upon the whole case, would not be well supported by the citation to the opinion of Chancellor Walworth.

The remark in *Blakeney vs. Ferguson*, referred to, was not made in the decision of that cause, but with reference to a supposititious case, seems to have been founded solely upon *Edwards vs. Bodine*, and is too indefinite in itself for authority; yet we are willing to qualify it by saying that, generally, counsel fees in injunctions, as well as in general causes, ought not to be the subject of allowance against the opposite unsuccessful party.

Nor can that money be recovered which McDaniel expended in paying the wages and traveling expenses of the witness Dyer whom he procured to take his negroes to Texas, while he himself staid behind to make defence to Crabtree's suit. Whenever a man contests a law suit, the contest involves a loss of time, a possible loss to his business, from which his attention is diverted, and the expenditure of money besides that paid to his lawyers.

A farmer may be obliged to obtain a substitute for his own labor or oversight, a mechanic may suffer by his absence from his shop, and a trader may lose the opportunity of making some desirable bargain, but these are incidents to all hindrances in the usual pursuits of life, and are not to be taken into account as losses to be reimbursed by the party who has brought an unavailable suit.

McDaniel further claims, and this, in amount at least, is the most important claim, that he was delayed about three weeks in sending his other servants to Texas, where he was about to take them when sued by Crabtree, that this delay caused him to lose making a crop in Texas in 1853, and that the crop, if made, would have been worth to him two thousand or twenty-five hundred dollars.

It is not explained how it is that a controversy respecting the title to seven negroes, three or four of them laboring hands, which did not require long personal attendance from himself till the issues had been made up, should have been permitted

to have kept idle and upon expense, some thirty other negroes, including twenty working hands; but however that may be, the claim for this sort of damages is too speculative to be allowed.

If the principle of the claim were held good, its practical operation would cover many collateral enquiries; as the health of McDaniel and his negroes in the new climate, the general productiveness of the Texas soil whence the crop would have been made, the results of cropping for that particular year, depending upon or affected by frost, rain, drought, hail, wind, etc., and the probable freedom from interruptions of labor, which might require the introduction into the case of elements of social, political and material history, whose investigation might be entertaining, but hardly appropriate in an inquisition for damages.

In this case, as in other cases, the proper rule of damages is the injury sustained by the party, and at the time and place of the injury.

The injury sustained by McDaniel in Lafayette county, where and while the negroes were taken from him, is that for which he should have compensation. The direct injury was the loss of the labor of the negroes. What that was worth at that time and place he should have and nothing more, as no injury to the negroes has been proven. *Smith vs. Condey*, 1 *How.* 35; *Loker* 2 *Damen* 17 *Pick*. 288.

It is upon this principle that in admiralty cases, in collision of ships, the rules for compensation is the actual value of the ship or goods that are lost or injured—the profits that the ship might have made had she gone on, without interruption, to her destination, are not to be computed. And generally profits of a disappointed adventure are not recoverable from the wrong doer that has caused the disappointment. *Sedgwick on Damages*, ch. *III*, p. 69–78; *The Schooner Lively and Cargo*, 1 *Gall*. 325; *The Amiable Nancy*, 3 *Whea*. 560. See *Amestad de Rues*, 5 *Whea*. 388.

We are not saying what compensation may be allowed as

exemplary damages in actions of tort promoted by malicious motives, or for fraudulent purposes.

But this is no such case, from any thing that the papers inform us. It was simply a contest of ownership of the slaves, in which Crabtree had the same right to affirm his claim that McDaniel had to deny it and assert his own.

And although the remedial process sought by Crabtree was forcible and likely illegal, McDaniel was deprived of the use of his property but twelve days, and for that wa fairly compensated by the judge who assessed the damages. Such other losses as he sustained by his successful suit, were incidental or might be occasioned by his own improvidence, or misfortune, and are not to be attributed to Crabtree.

Let the decree be affirmed.