ALBERS, *Respondent and Appellant*, v. THE MERCHANTS' EXCHANGE OF ST. LOUIS, ORTHWEIN *et al.*, *Appellants and Respondents.*

Division Two, March 10, 1897.

1. **Damages:** MALICE. Where the evidence shows no actual damage to one's business or person, and the humiliation and disgrace of which he complains were not at all traceable to malice, he is not even entitled to nominal damages.

2. ———: ———. The plaintiff was fined $50 for smoking in defendant's room in violation of its rules, and, on failure to pay the fine, was suspended from membership in the Merchants' Exchange, the defendant. He thereupon sued for $50,000 for punitive and exemplary damages and for attorney's fees expended in a former injunction suit instituted to enjoin his suspension. *Held*, as the rule under which he was fined was reasonable and proper, and no malice was shown in the directors who enforced it, and no injury resulted to plaintiff's business, that an instruction which directed one cent damages was erroneous, since defendants were clearly entitled to an instruction directing a verdict for them.

3. **Damages:** ATTORNEY'S FEES. The directors of a corporation are not chargeable with attorney's fees in an injunction suit brought by a member of a merchants' exchange to prohibit them from suspending him from membership, if the member had violated a reasonable and proper rule, and if, to maintain the dignity and good order of the association, they, without malice, suspended him, although such rule was in such injunction suit held invalid.

4. ———: ———. In Missouri taxable costs are fixed by statute and do not include attorney's fees except in a few cases specially named.

5. **Damages:** MEASURE OF. Compensation for actual loss is the professed object of the law, except when there has been fraud, oppression, or malice; then, the jury is allowed to give punitive or exemplary damages.

6. **Damages:** CORPORATE COURT: JURISDICTIONAL MATTERS. When the directors of a corporation, in exercising a judicial discretion under their charter, which gives them the power of a corporate court, make such errors of judgment as result in damages to a member of the corporation, they are not liable for the damages unless the act or acts complained of were maliciously and willfully done, for their action, in such case, is judicial in its character, and is kin to that of a ministerial public officer.

7. **Damages:** "PROBABLE CAUSE" DEFINED. The opinion discusses and defines *probable cause* in proceedings that lead to damage suits, p. 160.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED.

*Jos. S. Laurie* for appellants and respondents.

(1) The counsel fees which plaintiff was required to pay in order to obtain the injunction, and also the shame and humiliation which he suffered by reason of his suspension, are elements of the compensatory damages which he was entitled to recover. *Douglass v. Stephens*, 18 Mo. 362; *Waters v. Brown*, 44 Mo. 302; *Railway Co. v. McGrew*, 104 Mo. 282, 291; *Alliance Trust Co. v. Stewart*, 115 Mo. 236, 246; *Kansas City v. Morton*, 117 Mo. 446, 459; *Citizens R'y Co. v. Hobbs*, 43 N. E. Rep. (Ind.) 479; *Moore v. Kalamazoo*, 66 N. W. Rep. (Mich.) 1089; 1 Sedg. Dam., secs. 201–219; 1 Suth. Dam., secs. 85–90. (2) And where the injury is such that the party can not by his own efforts protect his rights, and counteract or reduce the impending damages, and it is within the power of the court upon proper application to do so, the injured party is authorized to avail himself of counsel and invoke the aid of the court at the expense of the wrongdoer, upon the

same principle that he might procure medical attendance if the injury affected his person instead of his property rights. 1 Suth. Dam., sec. 90; *Gilkerson Sloss Com. Co. v. Yale*, 47 La. Ann. 690; *State ex rel. Patterson v. Tittmann*, 35 S. W. Rep. 581. (3) In the case at bar plaintiff's suspension was for an indefinite period and, by its terms, tantamount to an expulsion. Great pecuniary loss to him was imminent as the natural result of such suspension, unless he submitted to the wrong and paid the fine; a step which the law did not require him to take for the protection of the wrongdoers. 1 Sedg. Dam., sec. 224; 3 Suth. Dam., sec. 948; *R'y Co. v. Mackee*, 71 Tex. 49; *Yorton v. R'y Co.*, 62 Wis. 367; *Albers v. Mer. Ex.*, 39 Mo. App. 583, 590. What was his duty under the circumstances? Should he fold his hands and passively await the destruction of his business and then seek compensation in damages, or should he at once use reasonable precautions to minimize the injurious consequences and avert the threatened loss? He chose the latter and by promptly employing counsel and obtaining an injunction, stayed further progress of the hands which otherwise would have accomplished his financial ruin. The wisdom of such step can not be disputed. (4) Shame and humiliation. It is now undisputed that mental suffering consequent upon physical injury, whether such injury be the result of negligence or intentional wrong, is a subject of compensation; and this is likewise true of the mental anguish which is supposed to continue long after the bodily pain has ceased, in cases where the injured party has consequently become permanently disfigured or disabled. *Porter v. R'y Co.*, 71 Mo. 66; *Trigg v. R'y Co.*, 74 Mo. 147. And the courts have gone a step further and hold that mental suffering is an element of actual damages in cases where there is no bodily pain, as where the vio-

lence consists of a slap in the face, or a kiss, or an assault without physical contact. (5) It is immaterial what is the nature of the wrongful act, whether accompanied by violence or not; it is enough if the doing of such act in itself puts an indignity or insult upon the other party. This is illustrated where the conductor of a railway train, under an honest mistake on his part as to the payment of fare, stops the train and compels the passenger to alight, acting considerately, however, and offering no violence. *Hamilton v. R'y Co.*, 53 N. Y. 25; *Carsten v. R'y Co.*, 47 N. W. Rep. (Minn.) 49; *C. & A. R. R. Co. v. Flagg*, 43 Ill. 364. Or where the passenger, a lady, having a first-class ticket, was wrongfully compelled by the conductor, under a misapprehension, to ride in a second-class car where her feelings and modesty were outraged by the profanity and obscenity which prevailed among the class of passengers in that car. 3 Suth. Dam., sec. 948; *R'y Co. v. Mackie*, 71 Tex. 491. Or where a landlord, acting upon the belief that the lease had been lawfully terminated, wrongfully dispossessed the tenant during his temporary absence from the house and moved his furniture into the street, whereby the tenant and his family were subjected to shame and mortification. *Moyer v. Gordon*, 113 Ind. 282; *Connell v. Western Union Telegraph Co.*, 116 Mo. 34. (6) In support of our contention that in an action of tort mental suffering disconnected with physical injury is a subject of compensatory damages, we cite the following authorities: "We conceive the correct rule to be that mental suffering or nervous shock may be recovered for whenever it is the natural and proximate result of the wrong done, if such wrong gives the injured party a cause of action." 3 Suth. Dam., sec. 943. "Sense of insult or indignity, mortification or wounded pride is a subject of compensation." Sedg. Dam., secs. 47, 69, 520. "The weight

of authority is in favor of the proposition that in estimating compensatory damages it is proper to consider the humiliation and degradation. imposed upon an injured person by the wrong done him." 2 Waterman on Corp., sec. 303. "The indignity suffered by the wrongful act of another is a proper subject of compensation, whether the act was wanton, malicious or willful, or whether it was simply negligence or a mistake." *R'y Co. v. Christian*, 39 Ill. App. 495. "In actions for personal tort, mental suffering, vexation and anxiety are subjects of compensation in damages. * * * We must hold that mental suffering directly consequent upon the tort, is ground for compensatory damages in an action for the tort." *Craker v. R'y Co.*, 36 Wis. 657, 678. "Wounding a man's feelings is as much actual damage as breaking his limbs." *Head v. R'y Co.*, 79 Ga. 358, 360. "Where mental pain or suffering is connected with, and follows as a natural consequence of a material wrong or injury, it is a legitimate element of damages." *Sloan v. Edwards*, 61 Md. 89. (7) The evidence tended to show malice in law and that issue should have been submitted to the jury. The defense set up in the answer as to advice of counsel was not sustained by the testimony offered. *Ludowiski v. Benevolent Society*, 29 Mo. App. 337; *Joyce v. Branson*, 73 Mo. 28. (8) We concede that the advice of counsel may rebut the presumption of malice, but in order to have such effect it must appear affirmatively, as stated in our objection, that all the facts bearing on the question were communicated to the counsel and that the party acted upon such advice in good faith *Sharpe v. Johnston*, 59 Mo. 557, 577. It is decided that where a defendant in a case involving an issue of malice seeks to avail himself of the advice of counsel as a defense, it must appear that such counsel was disinterested. *White v. Carr*, 71 Me. 555; 3 Law-

son's Rights & Remedies, sec. 1096 (p. 1886); Newell on Malic. Pros., p. 14; 21 Am. L. Reg. (N. S.) 588; 12 Cent. L. J. 457, 463.

*Judson & Taussig* for respondents and appellants.

Defendants have taken their cross appeal in this case, not for the sake of saving the costs, but in order that the legal positions for which they contend may be fully presented before this court, as their determination involves an important precedent for the future government of the Exchange and like institutions in the State. Defendants contend that while there was no error in the rulings of the circuit court in so far as it held that plaintiff was entitled to only nominal damages, yet that there was error against defendant in holding that there was a right of recovery for nominal damages. In other words, the court should have directed upon the undisputed facts, a verdict for defendants. Considering these positions in their order, we submit:

(1) Even upon the theory that the admitted facts showed a right of action in plaintiff, there was no evidence warranting the recovery of more than nominal damages: *First.* The attorney's fees paid by plaintiff in his litigation over the smoking regulation and right of suspension for nonpayment of fine were not recoverable. 1 Sedgwick on Damages [8 Ed.], secs. 234–236; *Haeussler v. Bank,* 23 Mo. App. 282; *Roberts v. Mason,* 10 Ohio St. 277–282; *St. Peter's Church v. Beach,* 26 Conn. 355; *McDaniel v. Crabtree,* 21 Ark. 431–434; *Brown v. City of Cape Girardeau,* 90 Mo. 377. *Second.* There was no evidence of malice. The testimony as to advice of counsel was properly received. The fact that the counsel consulted was one of the three thousand members of the Merchants' Exchange

was no objection. Greenleaf on End. [15 Ed], sec. 331–333. *Third.* There was no basis whatever for the recovery of compensatory damages for wounded feelings. *Connell v. W. U. Tel. Co.*, 116 Mo. 34; *Spohn v. Railroad*, 116 Mo. 633; *Strange v. Railroad*, 61 Mo. App. 592. (2) But not only was the court below correct in limiting plaintiff to nominal damages, but it erred in plaintiff's favor and against defendants in holding that he had any right of recovery at all. (a) Defendants having the chartered power to suspend or expel any member of the Exchange for misconduct, they are thereby constituted by the State a corporate court invested with general jurisdiction over finances, and they, therefore, acted judicially in determining that plaintiff's refusal to pay the fine imposed for disorderly conduct under the corporate by-laws was corporate misconduct. *Gregg v. Mass. Med. Soc.*, 111 Mass. 185; *Barrows v. Mass. Med. Soc.*, 12 Cushing, 402; Com. Dig., heading "Courts;" *Rex v. Richardson*, 1 Burr. 517; *Black and White Smiths' Ass'n v. Vandyke*, 2 Wharton, 309; *People v. Chicago Board of Trade*, 80 Ill. 134; *People ex rel. Page v. Chicago Board of Trade*, 45 Ill. 113; *Dickenson v. Chamber of Commerce of Milwaukee*, 29 Wis. 45; *Kemp v. Neville*, 10 Common Bench Reps. (New series) 523; *Groenvelt v. Burwell*, 1 Lord Raymond, 454; *Harman v. Tappenden*, 1 East, 555; *Ackerley v. Parkinson*, 3 Maule & Selwyn, 411, 424. (b) The same judicial character is extended to corporate tribunals created by the action of the corporators, that is, where there is no chartered power of suspension or expulsion. *Levy v. Magnolia Lodge*, 42 Pac. Rep. (Cal.) 887; *Ocean Castle No. 11, Knights of G. C. v. Smith*, 33 Atl. Rep. (N. J.) 849. (c) The principle of immunity which protects public judicial officers from private action on account of the erroneous exercise of jurisdiction extends to the members of corporate

tribunals, and to all persons, public or private, exercising judicial or *quasi* judicial authority, in the absence of malice or corruption. *Harman v. Tappenden,* 1 East, 555, cited in 3 Thompson on Corporations, sec. 4101; Mechem's Public Offices and Officers, sec. 638; *Pappa v. Rose,* L. R., 7 C. P. 32; Bishop on Non-contract Law, sec. 786; *Reed v. Conway,* 20 Mo. 22, and 26 Mo. 16; *Schoettgen v. Wilson,* 48 Mo. 253; *Pike v. Megoun,* 44 Mo. 491; *Dritt v. Snodgrass,* 66 Mo. 286; *Edwards v. Ferguson,* 73 Mo. 686; *Bradley v. Fisher,* 13 Wallace, 335; *Cooke v. Bangs,* 31 Fed. Rep. 640; *Busteed v. Parsons,* 54 Ala. 402; *Yates v. Lansing,* 9 Johnson, 407; *Donohoe v. Richards,* 38 Me. 305.   (d) Even conceding the correctness of the decision of the court of appeals, 39 Mo. App. 583, that defendants erred in holding that plaintiff's failure to pay the corporate fine was corporate misconduct, their action in so doing was, nevertheless judicial action in the exercise of their corporate jurisdiction, as distinguished from action without or in excess of their jurisdiction, and whether their action was erroneous or not, being taken without malice in good faith, under légal advice, no private action lies therefor.   *Kemp v. Neville,* 10 Com. Bench Reps. (New series) 523; *Groenvelt v. Burwell, supra; Harman v. Tappenden, supra; Ackerley v. Parkinson, supra; Hunt v. Hunt,* 72 N. Y. 229; *Lange v. Benedict,* 73 N. Y. 12; *Grove v. Van Duyn,* 44 N. J. L. 654; *Hamond v. Howell,* 2 Mod. 218.

GANTT, P. J.—This case is here on cross appeals.

The Merchants' Exchange of St. Louis is a corporation organized under act of March 4, 1863, amended by act of February 2, 1865, and February 12, 1875, whereby was incorporated a theretofore existing voluntary association. The corporation thus created had no capital stock and about three thousand

members.     The preamble of defendant's original articles of association is as follows:

"We, the members of the Merchants' Exchange of St. Louis, having a desire to advance and promote the commercial and manufacturing interests of the city of St. Louis, and wishing to inculcate just and equitable principles of trade, establish and maintain uniformity in the commercial usages of the city; acquire, preserve and disseminate valuable business information; and with a view to avoid and adjust, as far as practicable, the controversies and misunderstandings which may arise between individuals engaged in trade when they have no acknowledged rules to guide them, do hereby agree to be governed by the following rules, regulations and by-laws."

The charter of the Exchange as amended by the act of February 12, 1875, provided as follows:

"Section 2.  The rules, regulations and by-laws of the said association shall be the rules, regulations and by-laws of the corporation hereby created until the same shall be regularly repealed or altered in the mode herein provided; and the present officers of said association shall be the officers of this corporation until, by the terms of said rules, regulations and by-laws, their respective offices shall expire or be vacated, and the board of directors of said association shall have power to suspend or expel any member of said Exchange for misconduct or for violation of the rules, regulations or by-laws, or for other causes specified in said rules.

The government of the Exchange was vested by its rules in a board of thirteen (13) directors, including the president and two vice-presidents.   Section 8 or rule 4 provides as follows:

"Section 8.   The directors shall cause to be provided suitable reading and exchange rooms for meet-

ings of members, which shall be kept open during usual business hours; they shall have control over such rooms, and may establish and enforce such rules and regulations in regard to the use of the same as may seem proper; provided, however, that from 11 o'clock A. M. to 1 o'clock P. M. daily the same shall be set apart and applied for the general meeting for the transaction of business.''

The rules also provided, rule 4, section 9, a method of procedure against any member charged with misconduct or violation of any of the rules, regulations or by-laws, or other act specified in the rules:

"Section 9. It shall be the duty of the board of directors to examine charges preferred against any member of the Exchange, when made to the board in writing by a member of the Exchange, and to examine into the misconduct of any member in any way coming to their knowledge; and when any member shall be found guilty of a violation of any rule, regulation or by-law of the Exchange, or shall have failed or refused to comply with or fulfill the award of the committee of arbitration, of the committee of appeals, or of any properly constituted committee of the Exchange; or shall be found guilty of failing to comply promptly with the terms of any business contract or obligation, or of failing to equitably adjust and settle the same; or if any member shall be found guilty of refusing or neglecting to pay for property sold for cash on the delivery of the same; or when any member shall be found guilty of obtaining property upon false representation, or when any member shall be found guilty of making false or fictitious reports of sales or purchases; or when any member shall be found guilty of any act or bad faith or of any act of a criminal nature, or when any member shall be found guilty of giving false weight of flour, cornmeal, provisions, or any

other article, or of false packing, or of changing an original package with intent to defraud, such offending member shall be censured, suspended or expelled by the board of directors, and for disorderly or improper conduct in any of the rooms of the Exchange, may be fined, censured, suspended, or expelled, as they may determine. A majority of a quorum of the board of directors shall be necessary to fine, censure or suspend a member; and an affirmative vote of at least ten members of the board shall be necessary to expel. No member, however, shall be censured, suspended or expelled without having an opportunity of being heard in his defense; and any member charged with a violation of the rules of the Exchange, or with any of the offenses enumerated in this section, shall be notified in writing of the nature of such charges, and at the time at which such charges will be investigated by the board, at least five days before the day of trial.

"In investigations before the board of directors, either party shall be allowed to be represented by a member of the Exchange, either as professional counsel or as a friend. Any member suspended may be reinstated by a majority vote of a quorum of the board of directors;   *    *    *"

Under article 8 of the by-laws, smoking in the Exchange room between the hours of 11 A. M. and 1 P. M. was prohibited.

Under rule 16 it was provided that the rules could not be rescinded or altered without a two-thirds vote at a meeting of the members of the Exchange.

In September, 1888, the board of directors abolished the afternoon session of the Exchange and extended the morning session, which had theretofore closed at 1 o'clock to 1:15 P. M., and at the same time directed that there should be no smoking on the floor between 1 o'clock and 1:15.

Mr. C. H. Albers, the plaintiff herein, a member of the Exchange, denied the power of the board to make this change in the hours of business, and the prohibition of smoking in such extension of the morning. He declared it was a usurpation of power by the board, and declared to the president that it was his intention to make a test case.

The president of the board at that time, Mr. Charles F. Orthwein, testified:

"After the change was made, Mr. Albers came to me on 'Change and told me he thought the board had no right to make such a change of the rule forbidding smoking; that he would not recognize the right of the board, and he would not obey the rule; I told him that the board thought differently; that the board thought they had the right, and that they were acting under legal advice, and that he had better not violate the rule; and if he did he would have to take the consequences; he said that was just what he wanted; he wanted to bring the matter into court to see what rights he had in the matter; he said he wanted to take the matter to court. * * *."

"Yes, he said he would fight us, and fight the board; he said he would bring the matter, if necessary, into court."

Accordingly Mr. Albers publicly challenged the authority of the board of directors and the regulation made by them, by smoking on 'Change between 1 o'clock and 1:15 P. M., during public session; smoking, as he says, in plain sight of anyone that was there. Mr. Orthwein testifies that for the next few days he smoked continually after 1 o'clock. "I saw him, myself, smoking; he was reported by the floor committee to the secretary; I have seen him myself; for three or four days we took no notice of it, because we thought he would quiet down about the matter and abstain

from smoking; after three or four days he walked up to me with a cigar in his hand, and said, 'Mr. Orthwein, I want to say to you that I don't care for your rule, and I want you to see that I am smoking,' in a defiant and challenging manner; he said, 'I just want to show you that I am smoking.'"

He also went into the secretary's office and called his attention to the fact that he was smoking; wanted the officers of the Exchange to see what he was doing.

Written complaint was thereupon made by the floor manager against Mr. Albers; and he was thereupon cited to show cause before the board of directors, to answer the charge of disorderly conduct. He appeared and filed his written answer, admitting that he had smoked between 1 and 1:15, but claimed that he had a right to do so under the rules, and denied the validity of the regulation made by the board of directors. The board being advised by their counsel, whom they consulted, that their regulation prohibiting smoking between 1 o'clock and 1:15 was valid, found Mr. Albers guilty of disorderly conduct and fined him therefor the sum of $50, to be paid within five days from date.

Mr. Albers refused to pay the fine, claiming that it was illegal, and thereupon he was summoned to show cause why he should not be suspended for refusal to comply with the order of the board of directors. After due notice this matter was taken up by the board, and Mr. Albers persisting in his refusal, he was ordered suspended from membership. This action was taken on the afternoon of November 8, 1888, after the daily session. Mr. Albers was present when the order was made. On the next day Mr. Albers was excluded from the floor in accordance with this order of suspension, but he sued out an injunction in the St. Louis circuit court against the board restraining them from enforc-

ing this order of suspension on the morning of the tenth, and there was no further interference with his admission to the floor and in exercising the privileges of membership. So that he was only excluded one day.

Meantime the suit proceeded in the circuit court, and the circuit court judge, Klein, granted a permanent injunction, from which an appeal was had to the court of appeals, where the judgment was affirmed (see 39 Mo. App. 583). Both the circuit court and the court of appeals held that the board of directors was authorized to change the hours of daily session and to make the smoking rule, and that Mr. Albers was properly · subjected to corporate discipline for violation of that rule, but that the imposition of a fine was invalid because there was no limit upon the amount of the fine in the rule, and that the collection of a fine could not be enforced by suspension.

Plaintiff thereupon brought the present suit in the St. Louis circuit court against the ·Exchange and the individual directors who constituted the board at the time of his suspension, charging that defendants had acted, not only in excess of their authority and in violation of law, but in so doing they had "acted recklessly, willfully, and maliciously, and with design to injure and oppress plaintiff," alleged great pecuniary loss and damage and expenses by way of counsel fees, and asked damages in the sum of $50,000 against the corporation and the individual members of the board.

The answer of defendant set out the facts above set forth as to the nature of the corporation, circumstances attending the suspension; that the resolution of suspension was drafted by their counsel and adopted by them in good faith in the performance of their duties under the rules of the Exchange, without malice in any form, and that the suspension was held invalid by the

courts solely on the ground that there was no maximum fine fixed by the rules. The facts above set forth were put in evidence upon the trial before Judge Valliant and a jury, but no evidence was offered by plaintiff of malice on the part of the individual defendants.

It appeared from plaintiff's testimony that he was a grain speculator, buying and selling grain for future delivery for himself as well as for his customers, the largest part of his business being speculating on his own account. He had an assistant, a member of the Exchange, who filled orders on the Exchange that were received from other parties, and this class of business was not interfered with by his one day's suspension. During the business hours of the day of his suspension he spent part of the time in the hall adjoining the Exchange room, but did not attempt to make any trades for himself through other brokers. He admitted that if he had succeeded in making these speculations on that day he might have made money and might have lost. There was no evidence of any business loss in consequence of his suspension, and the only evidence of expenses was that of the payment of $500 to his attorney for all the legal services connected with the injunction proceeding, which included the arguments both in the circuit court and the court of appeals against the validity of the smoking rule as well as against the regularity of the procedure before the board of directors. Plaintiff also testified that he felt "humiliated" by the suspension and that it was a matter of common report. There was no evidence of assault by the doorkeeper in excluding Mr. Albers from the Exchange.

There was no evidence of any malicious or corrupt action or intention on the part of the members of the board of directors. On the contrary, several of the individual defendants, Messrs. Chas. F. Orthwein, then president of the Exchange; Mr. W. T. Anderson and

Chas. A. Cox, his successors as president, and Captain Isaac M. Mason, and P. P. Connor, all testified that there was no personal feeling against Mr. Albers on their part, but that their only intention and purpose was to maintain the dignity and the rules of the Merchants' Exchange. It also appeared that it was first proposed to suspend him for disorderly conduct in smoking, but that the fine was imposed because it was believed to be the lighter penalty. It was also shown that the directors acted throughout on legal advice and the orders of the board were drafted by their counsel.

It appearing that the counsel of the Exchange, under whose advice the directors acted, was one of the three thousand members of the Exchange, objection was made by counsel for plaintiff on the ground that he was interested in the subject-matter, which was overruled by the court.

Defendant asked the court to direct a verdict for defendant and also for the following instruction:

"The court instructs the jurors that under the charter of the Merchants' Exchange, the board of directors had the power to try members for misconduct and to suspend or expel members whom they found guilty thereof, and if the jurors believe from the evidence that the said board consulted with counsel and communicated all the facts within their knowledge to him, and were advised by said counsel that the refusal by plaintiff to pay the fine which had theretofore been imposed on him constituted misconduct for which said board was authorized under its charter to suspend him, and that said board in the performance of what they believed to be their duty, acted upon the advice of said counsel in good faith, and without malice, in suspending plaintiff, then the jurors must find for the defendants."

The court refused to direct a verdict for defendant

or to give the above instruction. The court also refused the following instructions offered by plaintiff:

"1. The court declares the law to be that the board of directors of the Merchants' Exchange had no authority to suspend Albers for non-payment of the fine imposed upon him; that their resolution of sentence suspending him from membership therein was absolutely void for want of jurisdiction, and in enforcing said sentence and depriving plaintiff of his right of access to the floor of the Exchange, defendants became wrongdoers, and the jury are therefore instructed to return a verdict in favor of plaintiff.

"2. The jury are instructed that so far as this case is concerned, it is immaterial whether Albers in his contention with the board of directors as to their authority to change the rule relative to smoking in the Exchange hall was right or wrong; even though the directors in that particular were right and Albers wrong, and even though, instead of fining they might have suspended him as for a violation of said rule, still, such facts constitute no defense to this action.

"3. In returning a verdict for the plaintiff the jury will estimate his damages as follows: *First.* They will allow him such reasonable sum as it may appear from the evidence that he was required to pay counsel in order to obtain and maintain the injunction annulling his suspension and restoring to him his rights as a member of the Merchants' Exchange. *Second.* They will allow him such sum as they may find will fairly compensate him for such shame and humiliation as may appear from the evidence resulted from said legal suspension. *Third.* If the jury believe from the evidence that the action of the directors of the Merchants' Exchange in suspending him was malicious, then the jury may add to the damages above indicated such sum (the aggregate not exceeding the amount claimed

in the petition) as the jury may believe from the evidence, taking into consideration defendants' ability to pay, will be sufficient to punish defendants for thus suspending plaintiff. ·

"4. It is not necessary to show malice by direct testimony; it may be inferred from facts and circumstances in evidence indicating the same.

"5. The jury are instructed that malice, as used in these instructions, means the intentional doing of a wrongful act without just cause or excuse. It is not necessary to constitute malice as here mentioned, that the defendants should have had any spite or ill will toward plaintiff."

The court gave the following instruction of its own motion:

"Upon the undisputed facts of this case as shown by the pleadings and evidence your verdict should be for the plaintiff. But there is no evidence before you that would justify you in concluding that the action of the board of directors in suspending the plaintiff from membership in defendant corporation was actuated by malice, and therefore you would not be justified in awarding the plaintiff exemplary or punitive damages; and since, in a case of this kind, attorney's fees expended, as mentioned in the evidence, and injury to feelings can be taken into account only in estimating exemplary or punitive damages, you would not be justified in taking into consideration, in estimating the plaintiff's damages, the amount expended by him for attorney's fees in the injunction case mentioned in the evidence, or injury, if any, to his feelings; but in assessing the plaintiff's damages the inquiry is limited to the actual pecuniary loss in his business consequent on the suspension, and since there is no evidence of any actual, substantial loss in that particular, you can award the plaintiff only nominal damages. You are

therefore instructed to return a verdict for the plaintiff and assess his damages at 1 cent.''

I.   It is perfectly obvious that, notwithstanding the allegations of pecuniary loss and damage from being deprived of his right to buy and sell on 'Change and his loss of credit, the pith of this case in the estimation of plaintiff and his counsel is the allegation ''that the acts and conduct of the defendants, the directors of the Exchange, in suspending plaintiff was not only in excess of their authority and in violation of law, but in so doing they acted recklessly, willfully, and maliciously, and with a design to oppress, disgrace, and injure plaintiff.'' We say it is apparent that the theory of plaintiff in drawing the petition and in the presentation of evidence on the trial was that he was entitled to exemplary or punitive damages.

At any rate, he utterly failed to show any pecuniary loss in consequence of his one day's suspension. He had an assistant, also a member of the Exchange, who filled orders on the Exchange for outside parties, as usual, on the ninth day of November, so that this class of his business was not molested for a moment during the day he was suspended.

As to his individual speculations, plaintiff testified he could make no estimate of any loss he suffered by not being on Exchange that day. He might have made money and he might have lost. He sometimes lost.

The only item of expense he could name was the payment of an attorney's fee of $500 for all of the legal services rendered him in the injunction proceeding, both in the circuit court and court of appeals.

Did the circuit court err in holding that plaintiff was not entitled to recover back this fee because there was no evidence that the directors were actuated by malice in suspending plaintiff from membership, and

that, in the absence of malice, the attorney's fee could not form an element of his damages?

It is certainly desirable that we should have definite and well defined rules as to the elements and measure of damages.   The amount a party is to recover for a legal wrong ought not to be left to the caprice of a jury when his damages can be estimated according to definite rules of law.   Compensation for actual loss is the professed object of the law, except when there has been fraud, oppression, or malice.   In these latter cases the jury are allowed to give punitive or exemplary damages.

In Missouri, taxable costs are fixed by statute and do not include attorney's fees.   There are a few exceptions to this general rule, made so by particular statutes as in partition cases, but these exceptions simply emphasize the general doctrine and policy of the State.

The law of this State in denying a party the right to recover from his adversary the expenses of litigation other than statutory taxable costs is in harmony with the law of our sister States throughout the Union.   Nowhere have we found it more tersely stated than by the supreme court of Arkansas in *McDaniel v. Crabtree*, 21 Ark. 431, in which that court sums up the rule and its exceptions in these words:

"Questions may arise between principal and surety, between parties to covenants in deeds, in actions for an oppressive and illegal use of extraordinary legal remedies, in malicious and fraudulent suits, and in admiralty cases, in which the assessing tribunal, in the exercise of its power of visiting the wrongdoer with exemplary damages, may include counsel fees in their estimate; yet it is not the less the general rule that a suitor must himself, and without compensation, bear the burden of charges for legal advice and defense of his suit." *Brown v. Cape Girardeau*, 90 Mo. 377; *Waters*

*v. Waters*, 49 Mo. 385; *Frissell v. Haile*, 18 Mo. 18; *Walker v. Borland,* 21 Mo. 289; *Haeussler v. Bank,* 23 Mo. App. 282. The decision in *State ex rel. Patterson v. Tittmann et al.*, 134 Mo. 162; s. c., 35 S. W. Rep. 579, is in entire accord with the rule above announced.

The obligation to pay the attorney's fee in that case did not arise out of the fact that the ward was successful in his suit against his curator, but the liability was determined by the terms of the curator's bond which, it was properly held, stood good as an indemnity against all the natural and proximate consequences of a breach of the duty which the curator owed the ward. The liability in such case flows from the breach of a contractual obligation.

An exhaustive collection of the cases will be found in 1 Sutherland on Damages [2 Ed.], in note 1 to section 85, page 179.

It must be held that defendants are not liable for plaintiff's attorney's fees unless there was evidence of malice in their action in suspending him from the privileges of the floor.

II. To maintain this action on the ground of malice it devolved upon plaintiff to prove that the defendants prosecuted the proceedings which terminated in the imposition of the fine and suspension of plaintiff from the privileges of the Exchange without probable cause, that is to say, that at the time of instituting and carrying on these proceedings by defendants, there were no facts or circumstances sufficiently strong in themselves to induce defendants, as reasonable and cautious men, to believe that plaintiff had knowingly violated a valid and reasonable rule or by-law of said Exchange, and that they, as directors, had the power to impose said fine and enforce it by suspension of plaintiff from the privileges of said Exchange, and that in so doing, they

were either actuated by hostile or vindictive motives against plaintiff, or that their acts in the premises were intentionally done with a knowledge that they were without legal justification or foundation.

The learned trial court instructed the jury that there was no evidence that the action of the board was actuated by malice, and in so doing it was abundantly justified by the record. On the contrary, the evidence shows that plaintiff was responsible for all the consequences that ensued. He defiantly assumed the prerogative of nullifying a most reasonable and proper regulation made by the board prohibiting smoking on the floor of the Exchange during business hours. It is somewhat difficult to conceive what inspired plaintiff to assume the position he did with reference to this rule. He had voluntarily become a member of the Exchange when the by-laws prescribed the business hours should be from 11 A. M. to 1 P. M., each day, and that smoking was prohibited during that time. When it was deemed best to lengthen the business session fifteen minutes the rule as to smoking was also altered so as to prohibit it during the additional fifteen minutes. No complaint appears to have been made that the old rule as to smoking had been deemed oppressive, but the idea of extending the prohibition fifteen minutes seems to have aroused the most violent opposition of plaintiff.

The conduct of the president and directors when notified that their rules would be defied and during the several days that plaintiff made a point of showing his contempt therefor, was exceedingly moderate and conservative. The rule had not been adopted in violation of the charter as both the circuit court and court of appeals decided, and as every court must decide, under the plain and unambiguous power conferred upon the board by their charter. It was essentially a just and proper regulation.

VOL. 138 mo—11

Mr. Orthwein, the president, voiced the spirit of moderation which actuated the board, when he testified that the officers winked at the defiance of plaintiff "because we thought he would quiet down and abstain from smoking," and in striking contrast with their patience with him is the conduct of plaintiff. Apparently chafing because the board were ignoring his breach of the rule, after he had persisted for three or four days, he walked up to the president and said, in a challenging manner, "Mr. Orthwein, I want to say to you that I don't care for your rule and I want you to see that I am smoking." It was only after this demonstration that a written complaint was made against his conduct, and he was cited before the board, and he admitted in writing that he had violated the rule. Up to this time no fair-minded man can doubt that the board of directors were entirely in the right and had not been guilty of any wrong to plaintiff, nor can any reasonable man doubt that plaintiff was altogether wrong in the attitude he had assumed toward the board.

The plaintiff wholly failed to show any hostile, angry or vindictive motive on the part of the defendants in proceeding to uphold the rule of the Exchange. It can not be doubted, moreover, that they honestly believed they had the right to impose the fine they did and they were advised by competent legal advisers that they could lawfully do so. While the evidence shows they intentionally imposed said fine, and suspended plaintiff, this record, is barren of evidence that they had any knowledge that their proceedings were without legal justification.

But defendants were not content to rest their defense here. The defendant directors each went upon the stand and testified that they had no personal feeling against Mr. Albers, and that they were actuated solely by a desire to maintain the dignity and rules of

the Exchange, and that they only did what their counsel advised them they had the right to do.

There is no force in the objection that because the attorney they consulted was himself one of the three thousand members of the Exchange, the defendants could not avail themselves of his advice. The Exchange is not a corporation organized for pecuniary profit. It has no capital stock and pays no dividends. A membership in such a body did not disqualify counsel to advise other members as to their rights under the charter. He was not at all interested in a legal sense in the suit against them.

The court was clearly right in holding there was no evidence of malice or oppression and hence there was no possible basis for recovery of the attorney's fee paid in the injunction suit.

Under all the evidence there could only have been a recovery by plaintiff of nominal damages in any event.

The claim for damages for wounded feelings is without merit or basis. Whatever publicity was given to the matter was the direct result of plaintiff's own conduct in willfully violating an obviously proper rule of the Exchange. The controversy was one of his own seeking, and he suffered no pecuniary injury whatever. His suspension was entirely disconnected with any physical rudeness or injury to his person. Any humiliation plaintiff may have felt was the consequence of his own wrongful and unprovoked act, and constitutes no basis whatever for damages for mental suffering.

Plaintiff's appeal must fail because no error was committed to his prejudice.

III. We are now required to consider the defendants' appeal.

They insist they are not liable even for nominal damages and costs.

By the charter of the Exchange as amended by the act of February 12, 1875, "the board of directors of said association shall have power to suspend or expel any member of said Exchange for misconduct or for violation of any of the rules or regulations or by-laws or for other causes specified in said rules."

The board of directors of the Exchange were by the charter as amended created a corporate tribunal to judge what constituted corporate misconduct, and it was within their jurisdiction to determine that certain acts of plaintiff constituted misconduct for which he might be suspended or expelled.

In other words, when acting within the powers conferred by the charter upon charges of misconduct by the member, they constitute a corporate court. *Dickenson v. Chamber of Commerce*, 29 Wis. 45; *People ex rel. v. Chicago Board of Trade*, 45 Ill. 113; *People ex rel. Rice v. Board of Trade*, 80 Ill. 134; *People ex rel. Johnson v. N. Y. Produce Exchange*, 44 N. E. Rep. 87; *State ex rel. v. Grand Lodge of Missouri*, 8 Mo. App. 148; *Levy v. Magnolia Lodge*, 42 Pac. Rep. 887; *Ocean Castle v. Smith*, 33 Atl. Rep. 849.

It is a cardinal principle of our jurisprudence that if an action be brought against a judge of a court of record for an act done in his judicial capacity, if he plead that he did it as judge of a court of record, this is a complete justification and where a ministerial officer does an act as a judge or does a judicial act which is within his power and jurisdiction he is not liable in a civil action by any person injured by his said act unless it be proved that the act was willful and malicious. *Reed v. Conway*, 20 Mo. 22; *Bradley v. Fisher*, 13 Wall. 335; *Stone et al. v. Graves*, 8 Mo. 148; *Pike v. Megoun*, 44 Mo. 491; *Dritt v. Snodgrass*, 66 Mo. 286; *Edwards v. Ferguson*, 73 Mo. 686; *Scott v. Fishblate*, 30 L. R. A. 696.

The distinction seems to run through nearly all the authorities between public judicial officers and ministerial officers, to the effect that judicial officers are not personally liable for their erroneous judicial acts, even if done with malice, whereas ministerial officers are only liable when their official acts are done through malice or willful oppression.

This principle of non-liability applies to the directors, trustees or other managing boards of private corporations when exercising the judicial discretion conferred upon them by their charters.

For mere errors of judgment by these officers of private corporations, in exercising their discretion under their charter powers, by which damage results to a member of the corporation, an action does not lie unless the act or acts complained of are maliciously and willfully done. Their action is judicial in its character. *Harman v. Tappenden*, 1 East, 555; *Gregg v. Mass. Medical Soc.*, 111 Mass. 185.

As already observed in the discussion of plaintiff's appeal this record is barren of any evidence of malice or oppression, and as it results from the provisions of the charter that in suspending plaintiff from the privileges of the Exchange the directors were acting as a corporate court, and that they were attempting to enforce a valid and reasonable by-law to prevent smoking upon the floor during the business sessions of the Exchange, and had duly notified plaintiff, they were invested with jurisdiction and the mere fact that they rendered an erroneous sentence for a violation of their rules will not subject them to damages notwithstanding the action of the circuit court avoided the conclusion they reached by enjoining the enforcement of their judgment.

As the facts wholly failed to sustain any claim for damages we think the learned circuit court erred in di-

recting a verdict for one cent thereby casting the costs of the action upon defendants, and for this error its judgment upon defendant's appeal is reversed.

It has become unnecessary to pass upon the validity of the by-law authorizing the board to impose a, fine. We express no opinion at this time as to its validity. We say this much, lest it might be thought we concurred in the judgment of the court of appeals in holding it invalid.

·We have preferred to pass upon the other features of the case, which fully dispose of it. The judgment for plaintiff is reversed.

SHERWOOD and BURGESS, JJ., concur.