EVANGELINE LOWTHER, Respondent, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed May 6, 1924.

1. **RAILROADS: Negligence: Maintaining Station Platforms: Degree of Care Required.** A railroad company owes passengers the duty of exercising ordinary care to keep and maintain its railroad station platforms in a reasonably safe condition.

2. ———: ———: ———: ———: **Injury at Station Platform by Stepping on Nail: Evidence of Other Nails: Admissibility.** In an action for damages for personal injuries sustained by plaintiff when she stepped upon a rusty nail on defendant's depot platform while she was passing from the waiting room intending to board a train, evidence that other nails were upon the platform when plaintiff received her injury was competent to show that the particular nail which caused the injury was located on the platform a sufficient length of time for defendant to have had knowledge thereof.

3. **APPELLATE PRACTICE: Not Duty of Appellate Court to Reconcile Conflicting Testimony.** It is not the duty of the appellate court to reconcile conflicting testimony.

4. **RAILROADS: Carriers of Passengers: Injury at Station Platform by Stepping on Nail: Negligence: Question for the Jury.** In an action for damages for personal injuries caused by stepping upon a rusty nail on defendant's depot platform while passing from the waiting room to board a train, as to whether or not defendant exercised that degree of care which the law requires to keep its platform safe, *held* a question for the jury.

5. **INSTRUCTIONS:** Railroads: Nails on Station Platform: Failure to Exercise Ordinary Care: Instructions not Conflicting. In an action for damages for personal injuries sustained by plaintiff when she stepped upon a rusty nail upon defendant's depot platform while passing from the waiting room to board·a train, an instruction predicating plaintiff's right to recover upon defendant's failure to exercise ordinary care to discover the presence of nails, and particularly the nail on which plaintiff stepped, did not conflict with an instruction confining the consideration of the jury to the particular nail which caused the injury, as the jury had a right to consider the fact of other nails being scattered over the station platform, for the purpose of determining the question of whether defendant was guilty in leaving this particular nail there.

6. **APPELLATE PRACTICE:** Instructions: Conflict: Favorable to Appellant: Not Basis for Complaint. An appellant cannot complain of error on account of conflict in instructions, where, if error, it was in its favor.

7. **DAMAGES:** Excessive Damages: Injuries to Foot: $3000 Not Excessive Under Evidence. A verdict for $3000 for permanent injuries to plaintiff's foot caused by stepping on a nail where she suffered intense pain, and the joint on the injured foot was larger than the one on the opposite foot, and would continue to grow unless such growth was removed by an operation, *held* not excessive.

8. **APPELLATE PRACTICE:** Appellate Court Authorized to Interfere With Verdict Only When it Clearly Appears Unreasonable and Excessive. The appellate court is not authorized to pass upon the question of the amount of a verdict one is entitled to receive or to interfere with a jury's action with respect thereto except when it clearly appears to be unreasonable and excessive.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. George E. Mix*, Judge.

AFFIRMED.

*W. F. Evans, E. T. Miller* and *A. P. Stewart* for appellant.

(1) The demurrer to the evidence should have been sustained, and the peremptory instruction requested by defendant at the close of all the evidence should have been given. There was no evidence whatever as to how

long the nail with which plaintiff's foot came in contact had been on the station platform or that defendant had knowledge of its presence there; and no substantial evidence that it had been in a position where it was likely to cause injury for such length of time that it could reasonably be inferred that defendant, in the exercise of ordinary care, would have known of its presence in time to have removed it before the occurrence of the injury. Williams v. Railway, 288 Mo. 11; Taylor v. Railway, 240 S. W. 512; Bassell v. Hines, 269 Fed. 231; Cluett v. Union Elec. L. & P. Co., 205 S. W. 72; Cluett v. Union Elec. L. & P. Co., 220 S. W. 865; American Brew. Assn. v. Talbot, 141 Mo. 674. (2) The court erred in admitting evidence that other nails had been on the platform at other places and at times prior to the date of plaintiff's injury. This evidence was without probative force to prove, or tend to prove, or to support a reasonable inference, that the particular nail which caused the injury had been on the platform for such length of time that defendant, in the exercise of ordinary care, could have known of its presence in time to have removed it before plaintiff was injured. Taylor v. Railway, 240 S. W. 512. (3) Instruction No. 1, given at the instance of plaintiff, is erroneous in that it authorized the jury to consider the fact of other nails being on other portions of the platform at times prior to plaintiff's injury, and is in conflict with instruction No. 3, given at the instance of defendant, which limited the jury to a finding in respect of the particular nail which caused the injury. It is reversible error to give conflicting instructions. Baker v. Railway, 122 Mo. 551; State ex rel. v. Ellison, 272 Mo. 583. (4) The verdict is excessive, and is the result of bias and prejudice on the part of the jury. Ice Co. v. Tamm, 90 Mo. App. 202, 203; Rockwell v. Third Ave. Ry., 64 Barb. 438; Brown v. St. Joseph, 184 Mo. App. 671, 672; Brown v. Carthage, 189 Mo. App. 333; Pearce v. Kansas City, 156 Mo. App. 230; Allen v. Springfield, 61 Mo. App. 270; Biggie v. Railroad, 159 Mo. App. 352, 353; Conner v.

Nevada, 188 Mo. 148, 162; Winkleblack v. Mfg. Co., 187 S. W. 95, 98.

*Foristel . & Eagleton* and *Harry S. Rooks* for respondent.

(1)   Demurrer to Evidence.   (a)   All the evidence must be considered, and every reasonable inference therefrom indulged in favor of plaintiff.   Stauffer v. Railroad, 243 Mo. 305, 316.   (b)   The evidence justified the jury in finding that the particular nail had been there long enough to constitute negligence.   Falder v. Dry Goods Co., 251 S. W. 138; Peetz v. Transfer Co., 198 Mo. App. 155; Anjou v. Railway, 208 Mass. 273; Bailey v. Railroad, 139 N. Y. 302; Regan v. Railroad, 224 Mass. 418; District of Columbia v. Payne, 13 App. D. C. 500.   (c)   The evidence justified the jury in finding that the general condition constituted negligence for which the railroad would be liable to plaintiff for injury caused by the particular nail.   Rusher v. City of Aurora, 71 Mo. App. 418; Propson v. Leatham, 80 Wis. 608; City of Latonia v. Hall, 31 Ky. Law Rep. 721; Weisenberg v. City of Appleton, 26 Wis. 56; Riley v. Iowa Falls, 83 Iowa, 761; City of Bessemer v. Whaley, 187 Ala. 525; City of Galveston v. Regan (Tex.), 43 S. W. 48.   (d)   When the general defective condition was shown, and that defendant permitted it to continue or habitually recur, it was not necessary to prove how long the particular nail had been there. Vance v. Kansas City, 123 Mo. App. 644; Drake v. Kansas City, 190 Mo. 370; Archer v. Johnson City (Tenn.), 64 S. W. 474; Farley v. New York, 152 N. Y. 222.   (e) ''Where the existence at one time of a certain condition or state of things of a continuing nature is shown, the general presumption arises that such condition or state continues to exist until the contrary is shown by either circumstantial or direct evidence, so long as is usual with conditions or things of the particular nature.''   Dean v. Railroad, 199 Mo. 386.   (f)   Plaintiff's case could be proved by circumstantial evidence and plaintiff was not

required to produce evidence excluding every possible cause for which defendant would not be liable. Nomath Hotel Co. v. Gas Co., 253 S. W. 975. (g) The injury was not so unforeseeable as to absolve appellant from liability. Dean v. Railroad, 199 Mo. 386. (2) Evidence. The court did not err in overruling the objections to evidence at the trial. All the evidence now complained of was admissible. Lock v. Railroad, 281 Mo. 532; Peetz v. Transfer Co., 198 Mo. App. 155; Gerdes v. Iron Co., 124 Mo. 347; Huff v. City of Marshall, 97 Mo. App. 542; Miller v. Town of Canton, 112 Mo. App. 322; Swadley v. Railroad, 118 Mo. 268; Kuntsch v. City of New Haven, 83 Mo. App. 174; Hudspeth v. Railroad, 172 Mo. App. 579; Franklin v. Railway, 97 Mo. App. 473; Bailey v. Railroad, 139 N. Y. 302; Turner v. Railroad, 158 Mass. 261; Randall v. Telegraph Co., 54 Wis. 140; Propson v. Leatham, 80 Wis. 608; Moore v. City of Burlington, 49 Iowa, 136; Wigmore, "Evidence" (2 Ed.), secs. 252, 437. (3) Instructions. Plaintiff's instruction No. 1 is correct. It does not conflict with appellant's instruction No. 3, but if it did appellant could not complain thereof. Christian v. Insurance Co., 143 Mo. 460. (4) The verdict is not excessive. Link v. Railroad, 233 S. W. 834; Maloney v. United Railways, 237 S. W. 509; Ertl v. Wagner Elec., 238 S. W. 577; Moran v. Kansas City Railway Co., 232 S. W. 1111.

NIPPER, C.—This is an action for damages for personal injuries sustained by plaintiff when she stepped upon a rusty nail on defendant's depot platform in Webster Groves, Missouri. She recovered judgment for $3000, and defendant appeals.

There is no question raised here as to the pleadings, and therefore it becomes unnecessary to refer to them in detail.

On the morning of the eighteenth of August, 1921, plaintiff went to defendant's station at about 10:30 o'clock for the purpose of boarding a train there to come into the city of St. Louis. There was a train due there

at about that time. The depot contained two waiting rooms, one at the west end, and one near the east end. The office located between the two had a bay window. The station platform was about fifteen feet wide between the bay window and the tracks, and about twenty feet wide between the door to the east waiting room and the tracks, and extended the full length of the building and beyond. The platform was composed of cinders according to plaintiff's evidence, and of white crushed rock according to defendant's evidence. Plaintiff entered the east waiting room for the purpose of making some inquiry of the agent concerning a ticket she had. After remaining in the waiting room a few minutes, she passed out of the door to board the train. A Mrs. Egan, and her nephew— a twelve-year-old boy, preceded plaintiff out of the door. As plaintiff stepped down from the door-sill onto the platform with her right foot, and while her left foot was still on the step, her right foot came in contact with a rusty nail about two and a half or three inches long, which pierced her shoe and the great toe of her right foot, the puncture reaching the bone of the joint. The little boy who was accompanying Mrs. Egan endeavored to pull the nail out of plaintiff's foot, but was unable to do so, after which a larger boy, John N. Haldane, eighteen years old, pulled the nail from her foot. The nail was bent and rusty. Haldane testified that immediately after this he noticed several nails in front of the door. The evidence did not disclose how long the particular nail which plaintiff stepped on had been on the platform, but the daughter of plaintiff, Mrs. Sheridan, testified, over defendant's objections, that she frequently had occasion to be in and around this station platform, and had on numerous occasions seen rusty nails on the platform and in the cinders, some of them as large as the nail which pierced plaintiff's foot; that she had noticed such nails in front of this waiting room door and along the whole platform; that they were scattered promiscuously and in plain sight and were not imbedded in the cinders but loose,

Plaintiff boarded the train, and after removing her shoe, noticed that the toe was bleeding very freely. She made some inquiry of those in charge of the train as to a doctor, but none could be found who was prepared to treat her. When she arrived in St. Louis, she was met at the station by her husband and taken to a physician, where she was treated and given an injection of antitetanus serum. She was afterwards treated by two other physicians. There was an infection and inflammation resulting from the injury, causing an enlargement and other defects in the joint of this toe. She was confined to her bed for three weeks. A physician who examined this injury nearly eighteen months after the accident happened testified that there was an inflammation in the joint which he termed a chronic low form of inflammation of the ends of the bone entering into the formation of this joint, and that there was a slight bony enlargement or growth on the end of the bone entering the joint nearest to the foot. He also testified that this was undoubtedly a permanent injury, progressive in form, and that the joint was likely to get larger, although the inclination to grow larger might be stopped by an operation.

The only evidence offered by the defendant was the evidence of the witness, Edward Burt, who, at the time of the injury, was defendant's station agent at this point, he being the only employee at the station. He testified that on the morning of the injury he swept out the front of the entrance to this waiting room for a distance of four or five feet from the door; that he didn't notice any nails lying around on the platform at the time; that express packages and boxes were never opened in front of or close to this waiting room door. Packages of freight and express were never opened on that side of the depot; that it was a matter of daily routine with him to inspect the promises all around the building, making these inspections three times a day, and that he had picked up nails in boards and on the platform; that he made this tour of inspection three times a day for the

purpose of picking up anything of that kind found on the platform, and that he had picked up nails all around the building, but very seldom found nails on that side of the depot; that there was a surface of chat about three or four inches deep all over the platform; that during the three years of service there he had never seen a rusty nail; that he looked around the door for nails immediately after plaintiff received her injury, but didn't see any.

Defendant requested an instruction in the nature of a demurrer at the close of the plaintiff's case, and also at the close of the whole case, which the court in each instance refused.

The grounds urged for reversal are: (a) Error in refusing to sustain defendant's demurrer; (b) in admitting evidence that other nails had been on the platform at other places and times prior to the date of plaintiff's injury; (c) that the court erred in giving plaintiff's instruction No. 1; and (d) that the verdict is excessive.

The defendant owed plaintiff the duty of exercising ordinary care to keep and maintain the railroad station platform in a reasonably safe condition. This is the measure of defendant's duty and obligation as enunciated by the authorities in this State. [Munro v. Railroad, 155 Mo. App. 710, 135 S. W. 1016; Wood v. Railway, 181 Mo. 433, 81 S. W. 152; Chase v. Railroad, 134 Mo. App. 655, 114 S. W. 1141; Joyce v. Railroad, 219 Mo. 344, 118 S. W. 21; Williams v. Terminal Railway Co., — Mo. Sup. —, 231 S. W. 954; Taylor v. Kansas City Terminal Railway Co., — Mo. App. —, 240 S. W. 512.] Learned counsel for defendant insists that its demurrer should have been sustained, because there was no evidence as to how long this particular nail had been on the station platform, and that it was error to admit in evidence the testimony as to other nails being found on this platform. Plaintiff, under the facts of this case, would not be limited to showing that the particular nail which caused the injury was located on this platform a sufficient length of time for defendant to have had knowledge thereof, by direct and positive testimony. This would be an unfair

rule. It would be competent, however, to show this by showing that other nails of the kind and character of the one in question were found upon this station platform at the time plaintiff received her injury, and that for some time prior thereto a witness had observed nails of this kind and character scattered promiscuously about on this platform at this point.

Defendant relies upon the case of Taylor v. Kansas City Terminal Railway Co., supra. There, plaintiff was injured in a railway station when she slipped on a piece of banana peeling on the floor of the corridor. There was no evidence as to how long this particular banana peeling had been there, nor was there any evidence that other banana peelings were seen scattered around over the corridor or about the station, and it being a place which passengers continuously used, and several passengers having preceded plaintiff immediately prior to her injury, the court held that there was no evidence that would authorize a submission of the case to the jury, because it could not be inferred that the banana peeling was on the floor any definite length of time before plaintiff was injured so that defendant could have had a rea-' sonable opportunity to remove it. The only evidence in that case respecting any banana peelings simply showed an isolated instance of one banana peeling having been found, with no evidence as to the length of time it had been there.

In the instant case we have the testimony that other nails were found at this place and in front of this station door at the time plaintiff received her injury, while nails were seen scattered promiscuously about the platform by passengers having occasion to use it on several occasions prior to this accident.

The evidence offered by defendant shows that it recognized its duty to keep the nails removed from this platform when the testimony of its station agent showed that he did remove nails and other obstructions from the platform, and made daily inspections for that purpose. Of course, if his evidence be true, the defendant had exer-

cised ordinary care to keep this platform safe. However, it is not our duty to reconcile conflicting testimony. There is substantial testimony tending to show that defendant had been derelict in its duty in this respect, and it therefore became a question for the jury as to whether or not it exercised that degree of care which the law requires under such circumstances.

Instruction No. 1 given at the request of plaintiff predicates her right to recover upon defendant's failure to exercise ordinary care to discover the presence of these nails, and particularly the nail on which plaintiff stepped, while the instruction given at the request of defendant confines the consideration of the jury to the particular nail which caused plaintiff's injury. It is urged by learned counsel for defendant that these instructions were conflicting, and therefore the case ought to be reversed. But there seems to be no confliction in these instructions. The jury had a right to consider the fact of other nails being scattered over this station platform, for the purpose of determining the question of whether defendant was guilty in leaving this particular nail there. If there was error in these instructions on account of conflict, it was error in defendant's favor, for which it cannot complain.

It is next insisted that the verdict is excessive. We have heretofore set out the facts with respect to the character of the injury sustained by plaintiff. In addition to what we have above stated, it appears that plaintiff suffered intense pain and still suffers pain at times from this injury to her foot which is a permanent one. If she is on her feet long at a time, as she is required to be, she suffers pain. The joint on the injured foot is larger than the one on the opposite foot, and will continue to grow unless such growth is removed by an operation.

We are not authorized to pass upon the question of the amount of a verdict one is entitled to receive under such circumstances, or to interfere with the jury's action with respect thereto, except when it clearly appears to be unreasonable and excessive.

Under the facts of this case we would not be warranted in disturbing the verdict of the jury. Therefore, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.