SHERRILL-RUSSELL LUMBER COMPANY, a Corporation, Respondent, v. KRUG LUMBER COMPANY, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion Filed June 6, 1924.

1. **SALES: Contracts: Severable and Non-Severable: Contract for Cars of Lumber to be Shipped at Intervals: Carload Unit For Acceptance or Rejection.** Where a contract for the sale of lumber provided that fifteen carloads of different kinds were to be shipped at intervals during a period of sixty to seventy-five days, *held*, under the contract, the carloads became units for acceptance or rejection.

2. ———: ———: ———: **Carload Unit for Acceptance or Rejection: Part of Carload Defective: Vendee Cannot be Compelled to Accept Part Complying with Contract.** Where a carload of lumber was the unit for acceptance or rejection, a vendee could not be compelled to accept part of carload complying with specifications if part was defective; the rule of a lumber association that the inspector's certificate is final for settlement as between vendor and vendee cannot be interpreted as requiring defendant to accept the lumber

---

*(1) Sales, 35 Cyc, p. 118, 1926 Anno; (2) Sales, 35 Cyc, p. 222.

in each car complying with specifications even though part of each carload could be rejected.

3. **CUSTOMS AND USAGES: Trade Customs: Contracts: Construed in Light of Customs if Reasonable.** When a contract is made in view of well-established customs of trade to which it relates, it is to be construed in the light of the customs, but a custom or usage to be relied on as a constituent part of a contract must be reasonable.

4. **SALES: Contracts: Non-Severable: By Giving Timely Notice Vendee May Refuse to Accept Lumber Not Reasonably Complying with Contract.** A vendee, under an entire and indivisible contract may, upon giving timely notice to the vendor, refuse to accept lumber which does not reasonably comply with the contract.

5. **CUSTOMS AND USAGES: Trade Customs: Requiring Vendee to Accept Part of Carload of Lumber Not Complying With Contract: Unreasonable.** A trade custom requiring the vendee to receive and accept that part of a carload of lumber complying with the contract even though a minimum portion of the lumber in the car conforms thereto, is unreasonable.

6. ————: ————: **Requiring Buyer to Accept Carload of Lumber When Seventy-five per cent. Complied with Contract: Unreasonable.** A trade custom which requires the vendee to accept the lumber in a car that contains only seventy-five per cent. of the lumber within the grade ordered, is unreasonable, as placing the purchaser at a disadvantage in using and taking care of such a car of lumber, and evidence relating to such custom should not have been admitted.

(3.) Customs & Usages, 17 C. J., Section 33; (4.) Sales, 35 Cyc, p. 222; (5.) Customs & Usages, 17 C. J., Section 33; (6.) Customs & Usages, 17 C. J., Section 33.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

REVERSED AND REMANDED.

*H. A.* and *Harry S. Gleick* for appellant.

(1) Where a seller of merchandise breaches an executory contract by failing to deliver the merchandise contracted for, the purchaser has a right to reject the merchandise delivered. Monarch Metal Weather Strip Co.

v. Hanick, 172 Mo. App. 680; Henry Gaus & Sons Mfg.
Co. v. Magee, etc., Co., 42 Mo. App. 307; Little Rock
Grain Co. v. Brubacker & Co., 89 Mo. App. 1; Jones v.
Norman, 228 S. W. 895; Ungerer & Co. v. Louis Maull
Cheese and Fish Co., 155 Mo. App. 95.    (2)    Where lum-
ber is purchased in carload lots, each car is an indivisible
unit and the contract cannot be construed as a contract
for individual sticks of lumber. Herrington et al. v. Sei-
del Lumber Co., 209 Mo. App. 73.    (3)    Where two par-
ties have entered into an express contract and where the
terms of that contract are clear and unambiguous, those
terms cannot be varied or contradicted by parol evidence
of custom or usage, and such evidence is not admissible
to make for the parties an agreement modified or differ-
ent from the one which they originally entered into.    17
Corpus Juris, p 492, "Customs and Usages," sec. 58; 4
Ruling Case Law, p. 25, "Bills of Lading," sec. 27; 27
Ruling Case Law, p. 189, "Usages and Customs," sec.
31; Hefferman v. Neumond, 198 Mo. App. 667; Kemper
Mill & Elevator Co. v. Hines, 239 S. W. 803; State ex rel.
v. Public Service Com., 269 Mo. 63; Edmunds v. Coch-
rane, 226 S. W. 1007; Martin v. Ashland Mill Co., 49 Mo.
App. 23; Pavey and Orr v. Burch, 3 Mo. 447 (reprint, p.
314); Miller v. Dunlap, 22 Mo. App. 97; Kimball v. Braw-
ner, 47 Mo. 398; Wolff v. Campbell, 110 Mo. 114; South-
western Frt., etc., Co. v. Standard, 44 Mo. 83; Turner v.
Morris, 142 Mo. App. 60, 125 S. W. 238.    (4)    A custom
must be certain. Ehrlich v. Aetna Life Ins. Co., 103 Mo.
231; Manzke v. Goldenberg, 149 Mo. App. 12, 129 S. W.
32; Pankey v. A. T. & S. F. Ry. Co., 180 Mo. App. 185.
168 S. W. 274.    (5)    A custom must be reasonable.
Martin v. Ashland Mill Co., 49 Mo. App. 23; National
Bank of Commerce v. American Ex. Bank, 151 Mo. 320;
Southwest Missouri Ry. Co. v. Morning Hour Mining
Co., 138 Mo. App. 129, 119 S. W. 982.    (6)    Evidence on
particular transactions may be introduced for the pur-
pose of rebutting an alleged custom and showing its falli-
bility.    17 Corpus Juris, p. 521, "Customs and Usages,"

sec. 87; Parrot v. Railroad, 140 N. C. 546; 1 Wigmore on Evidence, p. 692, sec. 376; Rose v. Lewis, 157 Ala. 521; Beach v. Travelers Ins. Co., 73 Conn. 118; Smith v. Landa, 101 S. W. 470. (7) An instruction which ignores material evidence is erroneous. Evans v. General Explosives Co., 239 S. W. 487, 494; Norton v. Kowazek, 193 S. W. 556; Nicholls v. Tallman, 189 S. W. 1184; Craig v. Bank of Granby, 238 S. W. 507.

*Curlee & Hay* and *Cobbs; Logan & Alexander* for respondent.

(1) Proof of usage and custom is admissible in evidence to interpret the meaning of the word "carload" and how same is dealt with in the trade. Evans v. Western Brass Mfg. Co., 118 Mo. 548; Baer v. Glaser, 90 Mo. App. 289; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629; Landau Gro. Co. v. Hart, 223 S. W. 793; Wilcox v. Baer, 85 Mo. App. 587; Blair v. Corly, 37 Mo. 319. (2) Even if the word "carload" appears to be plain and unambiguous, evidence of custom is proper to show a meaning and course of dealing in the trade contrary thereto. Soutier v. Kellerman, 18 Mo. 509; Evans v. Western Brass Mfg. Co., 118 Mo. 548; Landau Gro. Co. v. Hart, 223 S. W. 793. (3) Evidence of usages which prevail as to the subject-matter of a contract is properly received to annex terms thereto or to enlarge same. Hanks v. Lesieur, 204 S. W. 552; Long Bros. v. J. K. Armsby Co., 43 Mo. App. 265; Southwestern etc., Co. v. Stanard, 44 Mo. 71, and cases cited. (4) When a contract is made in view of well-established customs of the trade to which it relates, it is to be construed in the light of those customs. Estes v. Desnoyers Shoe Co., 155 Mo. 577; 17 C. J. 492, sec. 58; Joseph v. Andrews Co., 72 Mo. App. 551. (5) Where there is a well-known usage or custom which obtains in a trade it is presumed that all who are engaged in that trade, where it prevails, contract with a view to such usage unless then expressly exclude the presump-

tion by their contract. Heyworth v. Miller Grain, etc., Co., 174 Mo. 184; Hanks v. Lesieur, 204 S. W. 552; Soutier v. Kellerman, 18 Mo. 509; 27 R. C. L. 162; 17 C. J. 461; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629; Long Bros. v. J. K. Armsby Co., 43 Mo. App. 253; Barry v. Hamilton, etc., R. Co., 98 Mo. 62; Walsh v. Mississippi Valley Trust Co., 52 Mo. 434; Martin v. Ashland Mill. Co., 49 Mo. App. 23; Cameron v. McNair, 76 Mo. App. 366; Lowenstein & Thomas v. Wabash Ry. Co., 63 Mo. App. 77; Cameron v. Real Estate Co., 76 Mo. App. 370. (6) An established custom of a business is, by implication, incorporated into a contract in reference thereto, unless expressly excluded. Ester v. Desnoyers Shoe Co., 155 Mo. 577; Ehrlich v. Aetna Ins. Co., 103 Mo. 231; Herf & Frerichs Chem. Co. v. Lackawanna Line, 100 Mo. App. 164; Cole v. Skrainka, 37 Mo. App. 427; Southwestern etc., Co. v. Stanard, 44 Mo. 71. (7) Proof of a general, established usage of custom in a trade is by expert evidence based largely upon hypothetical cases. It cannot be established by proof of specific instances nor rebutted by isolated exceptions. 4 Wigmore on Evidence (2 Ed.), par. 1954; Southwestern, etc., Co. v. Stanard, 44 Mo. 71; Cleveland, etc., R. Co. v. Jenkins, 174 Ill. 398; 17 C. J. 455, par. 16. (8) There is a distinction between general usage in a trade and a custom or habit of individual parties themselves. The former is established by proof of the fact; the latter by proof of specific dealings. A. D. Birely & Sons v. Dodson, 107 Md. 235; 4 Wigmore on Ev. (2 Ed.), par. 1954.

DAVIS, C.—This is an action by plaintiff for a balance claimed on fifteen cars of lumber sold defendant. Defendant filed a counterclaim, in which it admits there is a balance due plaintiff of $2460.92 on ten cars of lumber which it accepted and which met the required grades and specifications, but states that it advanced $4916.39 on five cars of lumber which it rejected because said cars of lumber failed to conform to the grades ordered and that after

deducting $2460.92 which it admits owing plaintiff on said ten cars of lumber, it says that plaintiff owes defendant a balance of $2455.47 with interest advanced on the five rejected defective cars of lumber, together with storage charges of $650 thereon. On January 10, 1922, the jury returned a verdict for $2671.73, including interest, in favor of plaintiff on its cause of action, and found in favor of defendant on defendant's counterclaim for $204.78. Thereupon the court rendered a net judgment in favor of plaintiff and against defendant in the sum of $2466.95, from which defendant appealed.

The evidence tends to establish that on July 13, 1920, defendant placed an order with plaintiff's assignor, the Sherrill Hardwood Lumber Company, of Merryville, Louisiana, for fifteen cars of lumber. The order provided that "the lumber furnished on this order must be properly manufactured, of good average widths and lengths, and be of standard thickness when dry." The order then specified the following:

"Five cars 1" No. 1 Common Plain White or Red Oak at .......... $120.00 per M
Three cars 1" No. 2 Common Plain R or W Oak at .............. 75.00 per M
Two cars 1" Wormy Oak, at ....... 72.00 per M
Two cars 1" No. 1 Common Red Gum (Plain), at ................. 125.00 per M
Two cars 1" No. 2 Common Red Gum (plain), at .................. 75.00 per M
One car 5/4 No. 1 Common Sap Gum to include the No. 2 that developes No. 1, at ............. 80.00 per M
Thickness as above No. 2, at ....... 50.00 per M
Widths good average
Lengths standard
Grade National Hdwd. Lbr.
Ass'n. Inspection.

Plaintiff's acknowledgement of the order, among other things, provides: "National Hardwood Lumber

Company Association rules to govern inspection,'' and followed in general the order. Of the first thirteen cars of lumber shipped, eight were received and accepted, and five were inspected and rejected. These five cars furnish the subject of this lawsuit. Subsequently the last two cars of the fifteen were shipped, received and accepted. Of the five cars rejected, two were of red gum, and three of oak. They were promptly inspected by the defendant and found defective, and it is admitted by plaintiff that twenty-five per cent of the lumber in each car did not comply with the specifications. Each car was inspected by a representative of the National Hardwood Lumber Association, and upon request of the plaintiff a reinspection was had, with the result, as conceded by plaintiff, that the lumber in these five cars was twenty-five per cent off grade. Defendant in due time notified plaintiff that it was holding these cars subject to its order.

Plaintiff's reply alleged and its evidence tended to establish, in substance, that, in the lumber business, a custom exists on the part of the purchaser to receive and accept, at the contract and invoice price, that part of a car of lumber that complies with the specifications and grade. Relative to the portion of the lumber that does not comply with the specifications and grade, it becomes optional with the purchaser to adjust compensation for the off-grade lumber, or to reject it and hold it subject to the disposition of the vendor.

Plaintiff offered and read in evidence the National Hardwood Lumber Association's rules, in effect at the time of the order and shipment as follows:

''Members requiring the services of a National Inspector, are requested to make application direct to the Inspector, who is most convenient to the point where the inspection is to occur. A list of National Inspectors, together with the address of each, is printed in every issue of the Official Bulletin.

''When an inspection by an authorized Inpsector of the National Hardwood Lumber Association is completed,

the inspector shall deliver to the member requesting the inspection a certificate in duplicate, certifying to the amount and grade .of lumber so inspected. This certificate is final for settlement as between seller and buyer in all cases where an agreement as to the application of National Inspection exists between the parties.''

Such other facts as we deem pertinent will be later stated.

I. While defendant (appellant) briefs a number of points, all relate to a pleaded custom, with supporting evidence, to the effect that a general and universal custom, throughout the United States, was in vogue requiring the purchaser to receive and accept that part of a car of lumber complying with the grades and specifications.

Defendant ordered fifteen cars of lumber, five cars of which were No. 1 common plain white or red oak, three cars of No. 2 common plain R or W oak, two cars of wormy oak, two cars of No. 1 common red gum, two cars of No. 2 common red gum, and one car of No. 1 common sap gum to include the No. 2 that develops No. 1. The cars of lumber, below grade, were three cars of No. 2 common plain red or white oak, one car of No. 2 common plain red gum, and one car of No. 1 common plain red gum.

Plaintiff pleads in its reply that the contract for fifteen cars of lumber was entire and indivisible and that, in accepting other cars of lumber to apply on the contract, after the receipt and official inspection of the five cars (which defendant rejected) that defendant elected not to rescind the contract. The acknowledgment of the order by plaintiff pertinent here reads: ''The Sound Wormy Oak to be shipped at once, the remainder of the stock to go forward at the rate of one car every four or five days, subject car supply. Red gum and 5/4 No. 1 Common Sap to be shipped last.''

From the very nature of their agreement, this contract, was apportionable, fixing a carload as a unit for determining whether the lumber complied with the order. The lumber was not to be shipped at once, but at intervals. Defendant did not desire the lumber for a particular use, but to resell, for it was a dealer, as both parties knew. The course of time contemplated for fulfilling the order ran from sixty to seventy-five days. It certainly was within the contemplation of the parties, in this day of commercial activity, that defendant would seasonably revend the lumber, and that upon failing to resell, storage, demurrage and interest, for any length of time, would devour profits, and possibly capital. The carloads, under the contract, became units for acceptance or rejection. [See Herrington v. Seidel Lbr. Co., 209 Mo. App. 73, 236 S. W. 898.] The case of Arkla Lbr. Mfg. Co. v. Henry Quellmalz L. & Mfg. Co., 252 S. W. 961, as to carload lots, may be readily distinguished, for there the contract was entire and indivisible.

II. Plaintiff urges that, as this was a transaction under the National Hardwood Lumber Association rules, the rule which we have heretofore noticed, that the inspector's certificate is final for settlement as between vendor and vendee, might be interpreted as requiring defendant to accept the lumber in each car complying with specifications even though part of each carload could be rejected. This contention does not impress us as sound. In Arkla L. & M. Co. v. Quellmalz L. & M. Co., 252 S. W. 961, l. c. 968, it is said: "There is no merit in the defendant's contention that it offered to allow plaintiff to lay out and reject any of the lumber found to be below the grades specified in the contract and to furnish other lumber in lieu thereof. If the contract of sale is entire, as in this case, and part of the goods do not fulfill its requirements, the buyer may reject all, if he acts within a reasonable (time) after discovery that the contract has not been complied with." The court places its decision

on the premises that the contract is entire. In the instant case we have the unit of the car as the entire agreement. The National Hardwood Lumber Association rules have no bearing on the question, as plaintiff contends.

III. We are thus carried to the question of whether an entire contract of sale, with right in the vendee to reject all the lumber if he act within a reasonable time after discovery that the lumber does not comply with the contract, can be varied by a custom that demands that the vendee must accept such portion of the lumber as complies with the contract of sale, rejecting the remainder at his option.

The principle has been long accepted that when a contract is made in view of well established customs of the trade to which it relates it is to be construed in the light of the customs. [Estes v. Desnoyers Shoe Company, 155 Mo. 577, l. c. 585, 56 S. W. 316.] Again, as is said in Staroske v. Publishing Company, 235 Mo. 67, l. c. 75, 138 S. W. 36: "It is not to be doubted that if a general custom exists it usually enters into and forms a part of contracts respecting the matter to which such general custom pertains." In commenting on the custom there relied on, the Court in Staroske v. Publishing Company, 235 Mo. l. c. 76, say: "This is not a case in which a custom is relied upon merely as evidence of some other fact in issue, or to explain an ambiguity, or the meaning of some trade or technical term, but one in which an attempt is made to rely upon a custom or practice as a constituent part of a contract which forms the basis of appellant's supposed cause of action."

Plaintiff's evidence tends to show that, due to the weight of the various kinds of lumber, a carload of lumber varied to the extent of 10,000 feet, and that an ordinary carload of lumber approximated 15,000 feet, although 12,000 feet was considered a carload. The five rejected cars each contained from about 15,800 to nearly 17,000 feet, of which lumber therein twenty-five per cent

failed to reach the required specifications, leaving seventy-five per cent of each car in accord with the grade ordered. It is plaintiff's contention that, as seventy-five per cent of the lumber within the grade ordered was in each car, and as such lumber in each car constituted a minimum carload within the meaning of the order, defendant was obligated, by the custom, to accept and pay for the lumber reaching the required grade.

Under the evidence in this cause, and as the basis for recovery, the custom became a constituent part of plaintiff's contract. Taking the carload of lumber as a unit, plaintiff's contract was to deliver a carload of lumber that complied with the specifications. That these five carloads did not so comply, is unquestioned. Plaintiff designated the constituent carload by the lumber it had placed therein. The contract to deliver each unit as ordered appointed each carload an entirety. It is an established rule of law that the purchaser under an entire and indivisible contract may, upon giving timely and reasonable notice to the vendor, refuse to accept lumber which does not reasonably comply with the contract. It is equally well established that a custom or usage relied on as a constituent part of a contract must be reasonable. To assert that a general and universal custom obtains, requiring the purchaser to receive and accept that part of the lumber in a car complying with the contract even though only a minimum portion of the lumber in the car conforms thereto, is unreasonable. Such a custom would seem to put the purchaser at a disadvantage. Conceding that he might use to advantage a car of lumber that reasonably complied with the grades and specifications, we think it may be said that he cannot use to advantage, that is without expense, labor and loss, a carload of lumber, the major portion of which is of an inferior grade. The custom as pleaded and proved was unlimited. That is to say, the custom runs to the effect that if a percentage of the lumber in the car conforms to grades and specifications, even though it may be a minimum percentage of

the grade of lumber ordered, say five or twenty-five per cent of the lumber in the car, nevertheless the purchaser is forced and required to accept such portion of the lumber in the car, even a minimum percentage, as conforms to the grades and specifications ordered, it becoming optional with the purchaser to adjust compensation relative to the lumber that fails to conform to the order, or to reject it and hold it subject to the disposition of the vendor. However, we think that a custom which requires the purchaser to accept the lumber in a car that contains only seventy-five per cent of the lumber within the grade ordered is unreasonable, placing the purchaser at a disadvantage in using and taking care of such car of lumber.

In Steamboat Keystone v. Moies, 28 Mo. 243, 75 Am. Dec. 123, an alleged custom among steamboat carriers to return goods to the shipper if the consignee should refuse to receive them, and to charge freight upon the return trip as well as upon the outgoing trip, was held unreasonable if applied to all kinds and qualities of goods shipped, and a custom of so unlimited application was not accepted.

Such an unfair and unrighteous custom as the evidence in this case tends to establish, the law should not allow to exist, much less encourage and enforce. Neither in practice nor on principle can such a custom be upheld. The evidence relating to the custom should not have been admitted.

The Commissioner recommends that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of Davis, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and remanded. *Allen, P. J., Becker* and *Daues, JJ.,* concur.