P. C. JONES, RESPONDENT, v. WEST SIDE BUICK COMPANY, A CORPORATION, APPELLANT.—93 S. W. (2d) 1083.

St. Louis Court of Appeals.   Opinion filed May 5, 1936.

188

*E. J. Brennan* and *Wilder Lucas* for appellant.

*Nagel, Kirby, Orrick & Shepley* and *Everett Paul Griffin* of counsel.

*Thompson, Mitchell, Thompson & Young, Richmond C. Coburn* and *R. Forder Buckley* for respondent.

BENNICK, C.—This is an action for damages both acutal and punitive alleged to have been sustained by plaintiff, P. C. Jones, as a result of the fraud practiced upon him by defendant, West Side Buick Auto Company, in connection with the sale to him of a used automobile.

In his petition plaintiff alleged that on August 24, 1933, he bought from defendant a secondhand Buick sedan for which he paid defendant the sum of $837.50; that at and prior to the time of the sale defendant represented to plaintiff that the automobile had been driven only some 20,000 miles, and was of the value of a Buick automobile driven only that distance, and was worth the price for which the car was sold to plaintiff; that said representations were false and fraudulent, and were maliciously made by defendant for the purpose of defrauding plaintiff and of inducing him to purchase the automobile; that plaintiff relied upon said representations and purchased the automobile on account of the same; that in truth and in fact the automobile had been driven some 48,000 miles, and was of the value of an automobile that had been driven that distance, and at the time of its sale to plaintiff was actually worth only $337.50.

Plaintiff prayed judgment against defendant in the sum of $500 actual damages and $10,000 punitive damages.

In its answer defendant admitted the sale and delivery of the automobile in question to plaintiff, but denied each and every other allegation contained in his petition.

Tried to a jury, a verdict was returned in favor of plaintiff, and against defendant, for the sum of $150 actual damages and $2000 punitive damages; and from the judgment rendered in conformity with the verdict, defendant has duly appealed the case to this court.

The basic facts of the case are simple and undisputed.

In 1930 one Walter M. Smith purchased from defendant a new 1931 model Buick sedan, which he drove until August 5, 1933, when he traded it in to defendant in connection with his purchase of a new car. At the time it was traded in the car had been driven some 48,800 miles as shown by the speedometer, which was admitted by defendant's shop foreman to have been a "good, reliable" type.

After taking in the car defendant sent it to its shop to be reconditioned for resale, in which process certain work was done upon it having to do with the improvement of its general appearance and mechanical operation. According to defendant's records a total charge of $84.52 was placed against the reconditioning of the car, which figure comprised the cost to defendant both of the parts and of the labor used on the job.

After the reconditioning process had been completed insofar as defendant wished to go in making the car salable, it concededly caused the speedometer to be turned back from its true figure of approximately 48,800 miles so as to make it read some 22,400 odd miles. The shop foreman testified that this was not an unusual practice on defendant's part, and that in some cases he turned the speedometer back on his own accord, while in other cases he would be ordered to do so either by one of the salesmen or else by the sales manager.

Plaintiff purchased the car from defendant on August 24, 1933, paying the sum of $825 for it, and not the sum of $837.50 as alleged in his petition. He testified that he saw the car before he bought it; that he looked at it; that before making the purchase he noticed the speedometer reading which was some 22,400 odd miles; and that after buying the car he first learned that it had actually been driven in excess of 48,800 miles.

Plaintiff had evidence to show that the resale value of a used automobile is materially affected in the eyes of the general public by the number of miles the automobile has been driven; that the greater the mileage of a car may be, the greater has been the wear and tear upon it; that a car which has been driven 48,800 miles, ever after being reconditioned, is not as valuable as a car that has been driven only 22,000 miles; and that the difference in value of the particular car in question, if driven only 22,000 miles, or if driven 48,000 miles, was approximately $300.

Other evidence tended to show, though not very conclusively, that it is a sort of general practice among dealers of used automobiles to turn the speedometers back for purposes of resale, the theory apparently being that the dealer, after the reconditioning process is completed, is entitled to set the speedometer back to such a figure as the general condition of the repaired car might warrant.

Defendant argues as a matter of first insistence that no case was made by plaintiff for submission to the jury.

The case concededly turns upon the question of the legal consequences to be ascribed to defendant's admitted act in turning back the speedometer before offering the car for sale to plaintiff. In other words, the decisive issue in the case is that of whether such act may be said to have constituted a representation on defendant's part, and if so, of whether such act was fraudulent and malicious.

Defendant first argues that the mere turning back of the speedometer could not have constituted a representation; that in the first instance it was but a compliance on defendant's part with a custom of the trade; and that in any event speedometer readings in their very nature are or may be so inaccurate that they are not to be taken. as a guide in buying a used car.

We cannot agree with any of such suggestions. That defendant may have been following a trade custom in turning back the speedometer could not have served to make its act any the less a representation. The sole purpose of manufacturers in equipping automobiles with speedometers which register total mileage is to show at all times the total number of miles that the particular car has gone. In fact speedometers are so built and constructed that the average person would not know how or have the power to change the mileage reading upon them if he wished. In ordinary usage when one looks at a speedometer reading he feels that he is rightfully entitled to rely upon that reading and to believe that the car has gone the number of miles shown by the speedometer and no more. Of course we appreciate the fact that speedometers, being mere mechanical devices, are: not infallible, and that there are instances where a speedometer breaks and is out of operation until such time as it may be repaired, but these instances are the exception and not the rule. It is significant, however, that in this instance the speedometer was shown by defendant's own shop foreman to have been a "good, reliable" type, and there is not the least claim by any one that it had ever been out of operation or that its reading was inaccurate at the time Smith traded the car in to defendant.

The only possible reason defendant could have had in turning the speedometer back was to make it appear that the car had been run only the number of miles which the speedometer was made to indicate. We grant that the record discloses no statement by defendant either oral or written regarding the mileage of the car. However a representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him. [Bank of North America v. Crandall, 87

Mo. 208, 212; Stout v. Caruthersville Hardware Co., 131 Mo. App. 520, 527, 110 S. W. 619; 26 C. J. 1067.] Both reason and precedent tell us, and we so rule, that a representation with reference to the mileage of an automobile is a representation with reference to a material fact, and that it is nonetheless a representation of such a material character if made through the medium of turning back the speedometer than if made by word of mouth or written guarantee. [Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 125 So. 708; Lizana v. Edward Motor Sales Co., 163 Miss. 266, 141 So. 295.]

But defendant says that even though the mere turning back of the speedometer is to be regarded as a representation, it was nevertheless not a fraudulent representation, but was to be justified on the ground of the trade custom heretofore referred to permitting a dealer in used cars, having reconditioned a particular car, to set the speedometer back to such a figure as would reflect and give credit to the dealer for the value of the repairs and improvements made upon the car.

There are two prime reasons which at once suggest themselves why defendant may not justify its act upon the ground of a custom of the trade to turn speedometers back before offering used cars for sale to the unsuspecting public. In the first place there is no showing or contention that plaintiff was himself in anywise engaged in the used car business or familiar with the custom in question if such custom exists, and consequently he could not be bound by it, absent any proof either of his actual knowledge of it or that the custom was itself so widespread and well known as to require that knowledge of it be imputed to him. [International Shoe Co. v. Lipschitz (Mo. App.), 72 S. W. (2d) 122; Baer v. Glaser, 90 Mo. App. 289.]

Furthermore, regardless of any lack of notoriety of the custom in question, it is one designed to deceive and allow the sellers of used cars to obtain an unfair and undue advantage over their customers, and for such reason would in no event be recognized or countenanced by the law. The reasonableness of a particular custom for which legal effect is sought is always a subject of inquiry by the court, and when it is ascertained that the custom is contrary to the public good and is prejudicial to the many and beneficial only to the favored few, it will find itself repugnant to the principles of fair dealing which otherwise entitle a custom to be recognized in a court of justice. [Sherrill-Russell Lumber Co. v. Krug Lumber Co., 216 Mo. App. 1, 11, 267 S. W. 14; Martin v. Ashland Mill Co., 49 Mo. App. 23, 31; 17 C. J. 467-469.]

It could hardly be questioned but that the custom of setting back speedometers on used cars to some odd number of miles before offer-

ing the cars for sale to the public is patently designed to serve the interests of the few at the expense of the many. If the customer were told that the speedometer upon the car he was about to purchase had been set back so as to reflect the value of the car after being repaired, by which we mean that if he were frankly advised that the reconditioned car had been put in a state of mechanical perfection the equivalent of a car which had been run the approximate number of miles shown by the speedometer but without repairs upon it, our conclusion would be entirely different. However, the only legitimate inference from the evidence is, not that the customer is induced to buy a car upon which the speedometer reading has been admittedly lowered so as to represent the value of the improvements put upon the car, but instead that he is given or left to believe that he is buying a car which has been repaired and reconditioned after having been run only the number of miles shown on the speedometer. The evidence shows, and defendant unquestionably knew, not only that the mileage shown upon a car is a very material factor affecting its resale for the simple reason that the greater is the mileage, the greater has been the corresponding wear and tear upon the car, but also that no amount of reconditioning save a complete replacement of parts can compensate for the wear and tear to which a car has been subjected over a long period of use. The act of defendant complained of was therefore a fraud upon plaintiff, and the evidence in the case would fairly warrant no other conclusion. [Nash Mississippi Valley Motor Co. v. Childress, supra; Lizana v. Edward Motor Sales Co., supra.]

As a further reason why in its opinion the evidence was insufficient to have warranted the submission of the case to the jury, defendant makes the point that plaintiff wholly failed to prove one of the essential elements of his cause of action, which was that he had relied upon defendant's representation regarding the mileage of the car and would have acted differently if he had known the truth.

It is a fact, just as defendant suggests, that plaintiff did not testify directly to any such reliance on his part. This, however, does not necessarily militate against the sufficiency of the evidence to have made the case one for the jury to determine.

The rule is that while the plaintiff who complains of the defendant's fraud must show that the false representations made to him by the defendant induced him to act to his prejudice, the fact of his reliance upon such false representations need not invariably be established by direct evidence to that effect, but may be inferred from all the facts and circumstances in the case. [Birch Tree State Bank v. Dowler, 167 Mo. App. 373, 151 S. W. 784; Weller v. Meadows (Mo. App.), 272 S. W. 85; 27 C. J. 71.]

Indeed it is only because the fact of what the plaintiff would have

done had he known the truth concerning the matter represented to him is so peculiarly a matter reposing within his own personal knowledge that he is permitted to testify upon the question as somewhat of an exception to the rule which makes the conclusion of a witness incompetent upon proper objection interposed to it. [27 C. J. 58.]

In this case the evidence shows that before going through with the bargain plaintiff looked at the speedometer reading and observed the odd number of miles it showed. He must have done this to obtain the information which the speedometer was designed to disclose. He had a right to rely upon that reading, and he had no reason to suspect and no means of knowing that the speedometer had been deliberately set back by defendant. It is useless to say, as defendant does, that plaintiff made his purchase primarily upon the strength of the car's apparently good condition, for this is to disregard his positive testimony that he did take occasion to notice the speedometer reading. With plaintiff ignorant of the true facts and without ready means of information concerning them other than from what was represented to him by defendant, and with the fact of the car's mileage being a highly material factor upon the question of its desirability as we have already pointed out, we would be in accord with authority if we held as a matter of law that plaintiff relied upon what the speedometer showed. [27 C. J. 49.] To say the least the question was one for the jury upon the inferences fairly deducible from all the facts and circumstances in the case, and the demurrer to all the evidence was therefore properly overruled.

For a further point defendant assigns error to certain testimony of plaintiff's expert witness Haas in respect to the difference in value of the car purchased by plaintiff, assuming it to be in condition for resale, if driven 48,000 miles, or if driven only 22,000 miles. The witness stated that he had seen the automobile on the street, but had never examined it or driven it. He had also admitted that the value of a car in the secondhand market is greatly affected by its appearance and mechanical condition. It was because of the fact that the witness had admittedly not examined the car and had no knowledge of its mechanical condition save as he had heard other witnesses testify that defendant objected below to his testimony as to value and now asserts on this appeal that the court committed reversible error in permitting him to testify.

This point requires but scant attention at our hands. The witness had been himself a dealer in secondhand automobiles for a period of seven years, and in that connection had had ample occasion to become familiar with Buick automobiles along with all other makes. He knew the style, type, and model of the car in question. With this information in his possession he was qualified to testify upon the

question of the value of the car, and while the matters pointed out of defendant undoubtedly affected the weight to be accorded his testimony, they could not have rendered it wholly incompetent so as to have required the court to sustain an objection to it. [Barnes v. Elliott (Mo. App.), 251 S. W. 488; Stenburg v. Levy (Mo. App.), 236 S. W. 909; Harris v. Quincy, O. & K. C. R. Co., 115 Mo. App. 527, 91 S. W. 1010.]

Passing to the matter of the instructions, defendant suggests that the court committed error in giving contradictory instructions, the conflict being between plaintiff's instruction No. 1 and defendant's instruction No. 4. By plaintiff's instruction No. 1 the jury were told that they might return a verdict for plaintiff if they found that defendant had turned the speedometer back with the intention of falsely representing to plaintiff that the car had been driven only the number of miles shown by the speedometer, but without requiring a finding by the jury that such act on defendant's part had been accompanied by an affirmative representation to plaintiff that the mileage as shown by the speedometer stated the true mileage the car had run. In contrast with this, defendant's instruction No. 4 told the jury explicitly that although they might find that defendant had set the speedometer back, such act did not of itself constitute a fraudulent representation unless they further found that defendant had affirmatively represented to plaintiff that the mileage as disclosed by the speedometer after the same had been set back was the total mileage the automobile had been driven.

There was indeed a very obvious and patent conflict between the two instructions, but though the situation presented error, it is not error of which defendant can complain. This for the reason that plaintiff's instruction was correct and defendant's incorrect as we have already pointed out in connection with the demurrer to the evidence, and defendant's claim of error is therefore unavailing inasmuch as the error was in its favor and was committed at its own instance and request. [Moran v. Kansas City Rys. Co. (Mo. App.), 232 S. W. 1111; Adams v. St. Louis-S. F. Ry. Co. (Mo. App.), 272 S. W. 984; Lowther v. St. Louis-S. F. Ry. Co., 214 Mo. App. 293, 261 S. W. 702; Tutie v. Kennedy (Mo. App.), 272 S. W. 117; Da Pron v. Neu (Mo. App.), 43 S. W. (2d) 915.]

For its next point against the instructions defendant complains of the refusal of its instruction designed to withdraw the question of the allowance of punitive damages from the consideration of the jury. In brief, its point is that in cases such as this punitive damages are not to be allowed unless the wrong involves some violation of duty springing from a relation of trust or confidence, of where the fraud is gross, or unless the case presents other extraordinary or exceptional

circumstances indicating malice and willfulness, as where it might appear that the defendant had acted with the deliberate intent to injure the plaintiff. It argues that none of such essential elements were present in the case at bar so as to have made the case one for the assessment of punitive damages, and that consequently the question of punitive damages should have been withdrawn from the jury's consideration at its request.

Regardless of what the rule may be in other jurisdictions or of the refinements and limitations with which text writers may see fit to state it, the courts of this state seem now to be committed to the proposition that in cases of fraud and deceit punitive damages may be awarded where legal malice is present. [Luikart v. Miller (Mo. Sup.), 48 S. W. (2d) 867; Finke v. Boyer, 331 Mo. 1242, 56 S. W. (2d) 372.] Moreover, by legal malice the courts have in mind simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done. [Luikart v. Miller, supra; Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S. W. 1095.]

We have already determined upon both reason and precedent that defendant's act in setting back the speedometer so as to deceive plaintiff in regard to the mileage of the car was wrongful, and there is no claim that it was not intentionally done. The only excuse claimed is the alleged custom of the trade, and of course that custom, being itself wrongful, could furnish no just cause or excuse for any one to follow it. Moreover defendant must have known its act was wrongful since it was careful not to inform plaintiff of what had been done. The issue of punitive damages was therefore one for the jury along with the other issues in the case, and the court's refusal of the instruction designed to withdraw that issue from the consideration of the jury was entirely proper.

For its final point defendant insists that the jury's allowance of punitive damages in the sum of $2000 was not only excessive but so grossly so as to indicate that the allowance was the result of sympathy on the part of the jury for plaintiff and passion and prejudice against the defendant.

The ground upon which defendant puts its point evinces its appreciation of the true measure of our responsibility in such matters, which is to interfere with the jury's verdict upon the issue of punitive damages only where it plainly appears that the verdict was so out of all proper proportions as to reveal improper motives and an absence of honest exercise of judgment by the jury in its rendition. In other words, the power of an appellate court to revise an award of punitive damages, while it exists, is nevertheless to be exercised

sparingly and in extreme cases only, since the question of the amount of such an allowance may not from its very nature be measured by any fixed rules or standards and is therefore to be left to repose largely in the second discretion of the jury. So it is that if the jury appear to have exercised their honest judgment upon the facts in evidence, the appellate court will not assume for itself the right to substitute its own judgment for that of the jury, but if it appears that the jury's discretion was arbitrarily and capriciously exercised and that the verdict was manifestly the result of passion and prejudice towards the defendant, then the appellate court will be none the less hesitant to interfere than in the case of the allowance of an ordinary award of compensatory damages. [State ex rel. v. Ellison, 268 Mo. 225, 186 S. W. 1075; Hunter v. Kansas City Rys. Co., 213 Mo. App. 233, 248 S. W. 998; 17 C. J. 993.]

Punitive damages are of course allowed not only to punish the defendant for the particular offense he has committed against the plaintiff but also to serve as a warning and example to deter the defendant and others from committing like wrongs in the future. [Hoagland v. Forest Park Highlands Amusement Co., 170 Mo. 335, 343, 70 S. W. 878; De Ford v. Johnson (Mo. Sup.), 177 S. W. 577, 582; Hunter v. Kansas City Rys. Co., supra; 17 C. J. 968.] It obviously follows, therefore, that while the punitive damages allowed in a given case should bear some reasonable proportion to the actual damages sustained by the plaintiff, it is not so much a mathematical proportion which the jury are to have in mind as it is a due regard for the character of the injury which has been inflicted. [Hunter v. Kansas City Rys. Co., supra.]

The case at hand is unique in that it does not present an isolated wrong on the part of some person, attributable perhaps to passing anger or passion and unlikely to occur again, but instead it discloses the perpetration of a fraud purposely and deliberately done and sought to be justified on the ground of conformity by defendant with what is said to be a common trade practice followed by dealers in used automobiles at the expense of the general buying public. Undoubtedly the jury had all this in mind, and properly so, in fixing the amount of its allowance, and the refusal of the lower court to interfere on motion for new trial evinces its belief that the jury were actuated by no improper motives. Under such circumstances we think there is no warrant for our interference with the amount of the verdict, and all of defendant's insistence to the contrary stands for disapproval.

The judgment rendered by the circuit court should, therefore, be affirmed, and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of Bennick, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur; *McCullen, J.,* absent.

## On Motion for Rehearing.

BENNICK, C.—There has been filed on behalf of defendant a motion for rehearing attacking chiefly that portion of our principal opinion having to do with the points raised in connection with the allowance of punitive damages. While defendant assails, among other things, the amount of such punitive award when measured in the light of the proportion it bears to the actual damages allowed, we are nevertheless content to rest our views on that phase of the case upon what has already been said in our principal opinion. If the case was one permitting the allowance of punitive damages we are convinced that the record discloses no basis for the belief that the jury were swayed by any improper motives in the matter of their allowance. The real issue goes therefore to the question of the propriety of the allowance of punitive damages at all in a case of this character, with defendant insisting in its motion that in holding that such issue was submissible we have not only failed to follow the last controlling decisions of our Supreme Court but have brought ourselves into conflict with the established rule prevailing in all jurisdictions.

Now our conclusion upon the question was based largely upon the authority of the late cases of Luikart v. Miller (Mo. Sup.), 48 S. W. (2d) 867, and Finke v. Boyer, 331 Mo. 1242, 56 S. W. (2d) 372, both of which were actions for fraud and deceit, and in both of which it was expressly held, as we have pointed out in our principal opinion, that punitive damages can be awarded in cases of such character, provided only that the fraudulent representations counted upon were attended and characterized by malice, even though limited to implied or legal malice as distinguished from express or actual malice.

But defendant says that those cases can furnish no authority for our conclusion in the case at bar, since in both of them the element of trust and confidence existed between vendor and vendee, thus serving to have brought those cases within the doctrine consistently contended for by defendant, that for punitive damages to be allowed in an action for fraud and deceit the wrong of the defendant must involve violation of duty springing from a relation of trust and confidence.

We think there are two obvious answers to such suggestion on the part of defendant. In the first place, in neither of those cases did the court refer to the fact of any fiduciary relationship as being

determinative of the right to punitive damages upon proper proof as we think it would undoubtedly have done had it intended its decision to turn upon any such proposition; and in the second place, just as was recognized by defendant itself in the course of its original briefs, in both of those cases there were parties defendant who concededly stood in no confidential relationship to the plaintiff or plaintiffs therein.

To the contrary of defendant's contention, we think the court was intending to express no new doctrine, but only to follow the theory of damages long established in this state as evidenced by its decision in Albers v. The Merchants' Exchange of St. Louis, 138 Mo. 140, 159, 39 S. W. 473, wherein the court said:

"Compensation for actual loss is the professed object of the law, except where there has been fraud, oppression, or malice. In these latter cases the jury are allowed to give punitive or exemplary damages."

Furthermore it is significant that in adhering to such theory our courts find themselves in accord with what is said to be the weight of authority upon that question.

In Smith on Fraud, sec. 290, p. 311, wherein the author undertakes a discussion of the general aspects of the question now at issue, it is said:

"The allowance of exemplary damages in actions based on fraud, fraud in fact, has been the subject of much discussion, but the great weight of authority is that, in a case of actual fraud, they may be recovered."

And in 4 Sutherland on Damages (4 Ed.), sec. 1178, p. 4432, the author says of the propriety of the allowance of punitive damages in an action for fraud and deceit:

"On the principle upon which such damages are allowed where the doctrine of punitory damages prevails it is not easy to see how they are to be excluded as matter of law in cases of wilful and deliberate fraud followed by actual damage."

So we are constrained to adhere to the conclusions reached in our principal opinion regarding the propriety of the court's submission of the issue of punitive damages, and defendant's motion for a rehearing should therefore be overruled. The commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Defendant's motion for a rehearing is, accordingly, overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.